**Marie Hickey KENNEY**

v.

**William G. HICKEY.**

**No. 83–366–Appeal.**

Supreme Court of Rhode Island.

Jan. 23, 1985.

Amy R. Tabor, Pawtucket, for plaintiff.

Raul L. Lovett, Lovett, Morgera, Schefrin & Gallogly Ltd., Providence, Catherine A. Gibran, Providence, on brief, for defendant.

## OPINION

MURRAY, Justice.

This case comes to us on appeal from a Family Court order, which was entered pursuant to Rule 64(a) of the Family Court Rules of Procedure for Domestic Relations, modifying a previous custody order of the minor children of the parties. The defend-

ant's appeal is sustained in part and the judgment below is affirmed in part; that portion of the judgment awarding a guardian ad litem fee in the amount of $1,786 plus interest is vacated, and the case is remanded to the Family Court for hearing on the issue of a reasonable guardian ad litem fee consistent with this opinion and for entry of judgment in Family Court.

The following facts have been established. The parties, William Hickey and Marie Hickey Kenney, were married in 1971, and three children were born of that marriage between 1971 and 1977. In December 1979 plaintiff mother filed for divorce on the ground of irreconcilable differences. An interlocutory divorce decree was granted on June 4, 1980, and a final decree was entered to that effect on January 5, 1981. Pursuant to that decree, plaintiff and defendant were awarded joint custody of the children with physical possession placed in the mother subject to the father's rights of reasonable visitation. The plaintiff was also awarded exclusive use of the marital domicile where she had lived with her fiance, David Kenney, for at least eight months prior to entry of the final order. Such living arrangement was acknowledged, and consented to, by both the trial justice and defendant. The plaintiff married David Kenney in April of 1981. Three months prior to their marriage, Mr. Kenney moved to Florida in an effort to secure more stable employment. The plaintiff remained behind in Rhode Island with her children and, optimistic about her husband's success in gaining employment, commenced plans to relocate herself and her children to Florida. Thus, she filed a motion to remove, seeking transference of physical custody of the children to herself as sole custodian contrary to the prior joint custody instituted in the final order. However, the mother's circumstances were such that the trial justice did not see fit to grant her motion and issued instead a consent order, entered May 19, 1981, amending the final divorce decree. This order transferred physical custody of the children to the father although prior joint custody was maintained.[1]

Approximately one and a half years subsequent to entrance of that consent order, the mother once again brought a motion to modify the amended final decree, pursuant to Rule 64(a), seeking transference of custody from her ex-husband to herself. Because of a significant change in circumstances, the trial justice granted the wife's motion; consequently, sole custody of the children was placed in the mother for the academic year.[2]

A guardian ad litem, attorney Rogeriee Thompson, was appointed for the children by the trial justice. Attorney Thompson prepared an objective nine-page report, based upon her observations and conversations with the parties, relatives, family physicians, attorneys, and the children, prior to the hearing in which plaintiff sought once again to amend the final divorce decree in order to gain sole custody of the children. In her report, the guardian expressed her belief in the capabilities of both parties as parents and in their individual commitment

1. At the time of hearing, the existing circumstances that undoubtedly contributed to the mother's failure on her motion included the following:

1. Her second husband had secured living quarters that were insufficient to accommodate the entire family.

2. The new husband's employment position was not yet secure enough to ensure the permanence of the Florida relocation.

3. The natural father vehemently opposed the relocation.

2. Circumstances influencing the trial justice's decision included the following:

1. The couple's purchase of a three-bedroom house on which they obtained a lease with an option to purchase.

2. The stabilization of David Kenney's employment situation combined with weekly earnings of approximately $500.

3. The fact that the mother was no longer employed which ensured her availability to tend to her children's needs on a full-time basis.

4. The stabilization through the passage of time of the second marriage.

5. The children's expressed desire to reside with their mother.

to the children. However, she also described several traumatic incidents in which the children were caught in the crossfire of their parents' dispute. The guardian relayed the children's expressed preference to live with their mother and recommended that the court speak with the children on that matter.[3]

There are three issues presented here on appeal. The first issue is whether the trial justice abused his discretion in exercising jurisdiction over plaintiff's motion to modify. The second issue is whether the trial justice committed error in misconstruing and misapplying the evidence that was before him. The third issue is whether the trial justice erred in ordering defendant to pay one-half of the guardian ad litem's fees and in subsequently ordering that execution issue.

We find that the trial justice did not err in exercising jurisdiction over plaintiff's motion to modify pursuant to Rule 64(a). However, defendant appellant insists that plaintiff, as movant, did not meet her burden of proving a substantial alteration or change in circumstances as required prior to modification of a child-custody decree and that consequently the court did not have jurisdiction to grant the modification order.

 In this state, the question of the custody of minor children of divorced parties, whether provided for in a final decree or otherwise, continues within the jurisdiction and control of the trial court.[4] However, as defendant argues, the trial court should not exercise that jurisdiction without a showing that there has been some alteration or change in circumstances and conditions that existed at the time of the entry of the final decree. *King v. King*, 114 R.I. 329, 331, 333 A.2d 135, 137 (1975).

The burden of showing a change is on the moving party, and until such a point, the prior custody award contained in a decree is conclusive. *Id.; Vieira v. Vieira*, 98 R.I. 454, 457, 204 A.2d 431, 433 (1964); *Lawrence v. Lawrence*, 85 R.I. 13, 16, 125 A.2d 218, 220 (1956); *Kelley v. Kelley*, 77 R.I. 229, 231, 74 A.2d 452, 453 (1950). Once the record discloses a sufficient change in circumstances to permit a reopening of the decree, then the "polestar for the trial justice's guidance" is what, in the circumstances of the particular case, is best for the children's welfare. *Goldstein v. Goldstein*, 115 R.I. 152, 154, 341 A.2d 51, 52 (1975).

 In our opinion, the mother has met the burden of proof on the question of the requisite change in circumstance or condition.[5] The record clearly discloses significant changes in circumstances sufficient to warrant a reopening of the decree, and as a result we conclude that the trial justice did not abuse his discretion by exercising jurisdiction in this situation. Rather, he acted properly within the guidelines of our statutes and case law.

 The defendant argues further that since the trial justice failed to use the term "change in circumstances" itself, he did not require proof of such a change prior to exercising jurisdiction over the matter. Although it is evident from the record that the trial justice did fail to employ this language, such an omission is of no legal significance. As we expressed in *Lannon v. Lannon*, 86 R.I. 451, 454, 137 A.2d 529 (1957), even when a trial justice fails expressly to articulate findings of fact (which is not the case here), we shall not, for that reason alone, refuse to accord the decision the persuasive force usually accorded such decisions on review. This is

---

3. The children similarly expressed their preference to reside with their mother to the trial justice.

4. *King v. King*, 114 R.I. 329, 330–31, 333 A.2d 135, 137 (1975); *Reynolds v. Reynolds*, 79 R.I. 163, 85 A.2d 565 (1952); *Budlong v. Budlong*, 51 R.I. 113, 152 A. 256 (1930); G.L.1956 (1981

Reenactment) § 15-5-16, as amended by P.L. 1981, ch. 320, § 1.

5. *See* footnote 2 for a detailed list of significant changes that had occurred in the lives of the parties since entry of the consent order.

for the reason that implicit in a decision there are such findings of fact as are necessary to support it. *Id.* In the instant case, findings of fact were in fact made in regard to numerous changed circumstances, and implicit in those findings was the term "change in circumstances." The mere absence of the term itself is of no legal significance whatsoever. In addition, according to G.L.1956 (1981 Reenactment) § 15–5–16.2, as amended by P.L.1981, ch. 320, § 1, the court's responsibility is to set forth in its decision the specific findings of fact that show a substantial change in circumstances and upon which findings of fact the court has decided to make the decree retroactive. We find that the trial justice complied with his statutory duty. Having determined that a sufficient change in circumstances existed and having set forth the relevant findings of fact, the trial justice properly proceeded to render his decision based upon the appropriate standard, that is, the best interests of the children. *Goldstein v. Goldstein,* 115 R.I. at 154, 341 A.2d at 52.

The second issue raised by defendant involves the question of the trial justice's treatment of the evidence. The defendant argues that the trial justice committed reversible error by (1) overlooking or misconceiving expert testimony, and (2) affording improper weight to the preferences of the children as expressed to him in his chamber.

Upon reviewing the record, we conclude that the trial justice did not overlook or misconceive expert testimony. The defendant's argument on this point is that the trial justice based his decision to allow the children to be removed to Florida on a false premise. He claims that the trial justice erroneously interpreted the medical experts' testimony as advising that Florida would be a better environment for the middle child's health.[6] We find that there is no language or other evidence in the record to support defendant's conclusion. It is clear

to us that the trial justice evaluated and weighed the expert medical testimony about the best climate for Rebecca's health and, upon that basis, made a well-reasoned decision.

The defendant's contention that the trial justice afforded improper weight to the children's preferences as expressed to him in his chambers is likewise without merit. There is absolutely no evidence that the trial justice abdicated any of his responsibility as decision maker to the children. In fact, it has been our policy to afford a child's preference considerable weight in similar circumstances and there is no indication from the record that any greater weight was given here to such preferences than in the past. As we have observed in the past:

"Whether a minor child is competent to testify is a decision that rests primarily with the trial justice who is in a better position to observe the manner of the proposed witness and also the witness's apparent possession of or lack of intelligence. Moreover, the trial justice can resort to any examination of the witness that will disclose his intelligence and his capacity to understand the obligations of an oath. On review, a trial justice's decision will not be disturbed unless the record discloses that it was clearly erroneous. * * * In such circumstances we have likewise stated that '[c]onsiderable latitude must be left to the trial justice on a matter like this, because so much depends upon the impression that the child makes by his behavior on the witness stand.'" *Brierly v. Brierly,* R.I., 431 A.2d 410, 413–14 (1981).

In the instant case, the trial justice clearly considered the maturity and intelligence of all three children. As he stated:

"It was an experience I won't soon forget. They are very bright young children. Well spoken, well cared for in my opinion. * * * Mother and father are

---

**6.** The middle child, Rebecca, suffers from a heart condition, and therefore, climate was a factor afforded serious consideration by the trial justice.

divorced and there are constant conflicts between the mother and the father yet the children seem to be able to set that all back when they speak with somebody like me and told me all I wanted to know and they didn't hold anything back. They were very honest with me. I think they know what the truth is. * * * The children have indicated to the Court they wish to be with their mother and I believe the children."

Of course "a child's desires must yield to the paramount consideration of what is best for the child's ultimate good[.]" *Sleboda v. Sleboda,* R.I., 445 A.2d 276, 278 (1982). However, the weight to be given to the preference of the child is a matter within the sound discretion of the trial court; and although the expressed preference is not conclusive on the issue of what best promotes the child's welfare, such a preference is competent and highly probative evidence on the particular issue. *Id.*

■■■ As a result of the reasoning expressed above, we conclude that the trial justice, who was in a much better position to observe than we are, appropriately evaluated the evidence presented to him concerning the expert testimony and the expressed wishes of the children.

■■■ The third and final issue presented to us concerns the trial justice's decision that both parties share equally the fees of the guardian ad litem. The defendant argues that the trial justice's following statement should control: "[n]ormally the plaintiff [the moving party] would be responsible [for the payment of the Guardian's costs] but the facts of this case are such that sharing seems more appropriate." Therefore, defendant asserts that the trial justice should have followed "normal" procedure. We conclude that defendant's argument is without merit.

According to § 15–5–16.2, the court may, in its discretion, appoint an attorney or guardian ad litem to represent a child's interests and "[t]he court shall enter an order for costs, fees and disbursements in favor of the child's attorney. The order shall be made against either or both parents." Therefore, the trial justice acted within his statutory authority in dividing the costs of the guardian ad litem between the parties.[7]

■■■ Concerning this final issue, defendant also argues that the trial justice erred in allowing execution of a fee to issue without first making a finding concerning the reasonableness of the fee on a record devoid of the specific amount of the request and without requiring factual evidence, such as an affidavit from the guardian, in support of a particular amount. The defendant cites *Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co.,* R.I., 464 A.2d 741 (1983), in support of this latter argument. In that case we addressed the same issue, that is, "whether a trial justice should determine a reasonable fee without the aid of expert testimony or whether specific evidence is required to decide the issue." *Id.* 464 A.2d at 743. Our conclusion in *Colonial* was to adopt the majority rule, illustrated in a Vermont case,[8] requiring affidavits or testimony establishing the criteria on which a fee award is to be based.

As a result of our holding in *Colonial,* the portion of the judgment awarding guardian ad litem's fee in the amount of $1,786 plus interest is vacated and the case is remanded for hearing on the sole issue of a reasonable fee. Hence, the judgment below is affirmed in all other parts.

The defendant's appeal is sustained in part and denied in part.

**7.** Although this particular trial justice's "normal" procedure may be to hold the moving party responsible for the costs of the guardian ad litem, it is certainly within the statutory guidelines and within his statutory discretion to alter such procedure in order to fit a particular set of facts and make an order for costs "against either or both parents." G.L.1956 (1981 Reenactment) § 15–5–16.2, as amended by P.L.1981, ch. 320, § 1.

**8.** *Young v. Northern Terminals, Inc.,* 130 Vt. 258, 261, 290 A.2d 186, 189 (1972).