Justin A. PARRILLO, Jr.

v.

Carla J. PARRILLO.

No. 86–512–Appeal.

Supreme Court of Rhode Island.

March 7, 1989.

Thomas R. DeSimone, Providence, for plaintiff.

Stephen M. Litwin, Patricia A. Hurst, (D'Amico & Hurst), Providence, for defendant.

## OPINION

KELLEHER, Justice.

This Family Court appeal introduces us to Justin and Carla Parrillo, their three minor children, and Carla's live-in lover, Joseph DiPippo. Justin and Carla Parrillo were divorced by a final judgment of divorce entered in the Family Court in mid-May 1986. At that time their oldest child was thirteen and their youngest was eight. Physical possession of the children was awarded to Carla, with Justin having reasonable visitation rights. In early June 1986 Carla returned to the Family Court, seeking to modify the final judgment by establishing specific times when Justin could exercise his visitation rights at a location away from what had been the marital domicile. Justin responded by filing a motion to modify the final judgment by having Carla restrained from permitting any "unrelated males" to stay overnight at her residence.

The respective motions came on for a hearing before a Family Court justice in late October 1986. Carla told the trial justice that Justin began to harass her once he learned she was dating Joseph. Carla acknowledged that Joseph would remain overnight "[o]nce or twice a week behind closed doors." Carla saw no risk to the children, who were present when Joseph was staying overnight, because, she explained, the daughters slept in separate bedrooms about twenty feet away from her bedroom and the son's bedroom was downstairs. When asked if Joseph wore his pajamas in front of the children, Carla explained that when Joseph stayed overnight, he wore a jogging suit. She explained to the trial justice that the children liked Joseph but that she had no intention of marrying him in the near future.

Justin began to reduce his support payments once he learned that Joseph was making his nocturnal visitations.

With the consent and in the presence of counsel, the trial justice met with the three children in his chambers. All the children said they got along well with Joseph, although the son did say that there were times when he did not like him.

In a bench decision given immediately after the presentation of the evidence, the trial justice stated that the children "appear to be well cared for" and that he could not fault the mother's care of her children. However, he did observe that Joseph's overnight visits, in the presence of the children, were not conducive to their general wellbeing, at least in terms of their psychological welfare. The trial justice did observe that if Carla married Joseph, he would become the children's stepfather and the cohabitation[1] issue would become moot.

The trial justice directed Carla to refrain from allowing any "unrelated males" to stay overnight at her residence when the children were present.

Carla argues that the trial justice erred when he entered the order because there was no evidence showing that her sexual relationship "with her lover" was not conducive to the psychological well-being of her children. Again, Carla's counsel also emphasizes that when a female custodial parent is otherwise deemed fit and there is an absence of any evidence indicating that her sexual relationship with her companion has had an identifiable adverse effect upon her minor children, the trial justice may not infer that such relationship is not conducive to her children's best interests.

The Family Court retains jurisdiction over the custody of the minor children of divorced parents regardless of whether custody was initially established by judicial decree or agreement of the parents. *Kenney v. Hickey*, 486 A.2d 1079, 1082 (R.I. 1985); *Cambra v. Cambra*, 114 R.I. 553, 556, 336 A.2d 842, 844 (1975). However, jurisdiction should only be exercised when the party seeking the modification shows

---

1. In using the term "cohabitation," we are referring to sexual relations.

by a fair preponderance of the evidence that the circumstances and conditions that existed when custody was decided have been changed or altered. *Veach v. Veach,* 463 A.2d 508, 510 (R.I.1983); *Cambra v. Cambra,* 114 R.I. at 556, 336 A.2d at 844. Upon the movant's meeting this burden, the court is free to decide whether the requested modification is warranted.

Many jurisdictions have considered this type of living arrangement in the context of a motion to modify a custody decree. These cases almost universally hold that such an arrangement is a sufficient change to warrant the consideration of the best interests of the children. *Ketron v. Ketron,* 15 Ark. App. 325, 692 S.W.2d 261 (1985); *Walden v. Walden,* 483 So.2d 87 (Fla. Dist. Ct.App.1986); *In re Custody of McGuire,* 487 N.E.2d 457 (Ind.App.1985). A small number of courts have held that the sexual misconduct of the custodial parent, while the children are present in the home, is adequate reason to modify the custody decree, even in the absence of any evidence of detrimental effect on the children. *Small v. Small,* 412 So.2d 283 (Ala. Civ. App.1982); *Bagents v. Bagents,* 419 So.2d 460 (La.1982). However, the vast majority of courts considering the issue decline to adopt this approach and instead consider the parent's misconduct as a factor in determining the best interests of the children. *Ketron v. Ketron, supra; Walden v. Walden, supra; In re Custody of McGuire, supra.* These courts hold that an award of custody will not be modified absent a showing that the parent's living arrangement has a detrimental effect upon the children.

This court, in *Vieira v. Vieira,* 98 R.I. 454, 204 A.2d 431 (1964), approved a change of custody from the mother to the father because six days after granting the father's petition for a divorce on the grounds of gross misbehavior, the mother and the children spent the night at a New Hampshire motor lodge. Present at the lodge was the male whose association with the mother caused the divorce. This court, in commenting on the trial justice's action, observed "it cannot seriously be questioned that the best interests of these children could no longer be served by continuing their custody in their mother. The harmful effect of her conduct on children of tender years and at impressionable ages cannot be doubted." *Id.* at 458, 204 A.2d at 433.

However, in this dispute no change in custody has been ordered by the Family Court. In entering the order that was without question directed at Joseph, the trial justice, in simple and direct language, ordered the mother to forgo any overnight visitations with Joseph on those occasions when the children are present. We cannot fault the trial justice's actions. Joseph may still visit the marital domicile overnight, with the exception of those times when the children are with their mother. Notwithstanding the views of Carla's appellate counsel to the contrary, we see no great constitutional issue in this controversy.

The mother's appeal is denied and dismissed. The order entered by the Family Court is affirmed.

FAY, C.J., did not participate.