Nancy G. ROGERS

v.

Curtis W. ROGERS.

Nos. 89–601–M.P., 90–108–A.

Supreme Court of Rhode Island.

April 2, 1991.

Jerry L. McIntyre, Edwards & Angell, Providence, for plaintiff.

Anthony F. Muri, Goldenberg & Muri, Providence, for defendant.

## OPINION

FAY, Chief Justice.

These consolidated matters are before the Supreme Court on appeal by the defendant, Curtis W. Rogers, from a judgment of the Family Court entered November 22, 1989, modifying a final judgment of absolute divorce (the judgment) entered May 10, 1985, and by way of a petition of the defendant for a writ of certiorari to review those aspects of the judgment not properly heard on appeal. The defendant asserts that the trial justice erred in reducing the defendant's alimony obligations by only $15,000 annually without setting forth sufficient specific findings of fact to support the decision; in failing to modify the prior alimony order retroactively; in awarding counsel and accounting fees to the plaintiff, Nancy G. Rogers; in failing to suspend the enforcement of the defendant's obligation to pay the initial $79,000 payment in connection with the equitable assignment of the Martin–Copeland Company stock (the stock); and by suspending payments in connection with the stock assignment until such time as the stock regains value or, in the alternative, until such time as certain of the defendant's tax shelters should realize value. We reverse the decision of the trial justice concerning the retroactive application of the modified alimony decree, and we affirm the decision regarding the remaining issues.

The plaintiff and defendant were married on February 13, 1960. At that time, defendant was employed by the Martin–Copeland Company (Martin–Copeland) and eventually advanced to the position of president. During the twenty-four years of their marital relationship, plaintiff and defendant experienced countless difficulties, including the unjustified philandering of defendant, which culminated in an action for divorce. The Family Court found that "irreconcilable differences between the parties * * * caused the irremediable breakdown of the marriage" and therefore granted an absolute divorce on that ground in 1984. The trial justice determined that plaintiff's services as a homemaker and mother were comparable to defendant's services as an employee of Martin–Copeland and that plaintiff's contributions to the relationship and the acquisition, preservation, and appreciation in the value of defendant's stockholdings in Martin–Copeland were substantial.

After considering the contributions and circumstances of each party, the trial justice ordered defendant to hold all his Martin–Copeland stock, then valued at $1,400,-000, in trust and to pay 40 percent of the proceeds, or $560,000, to plaintiff no later than July 1, 1995. The defendant could elect to fulfill this obligation by making ten annual payments of $56,000 beginning July 1, 1985. If defendant elected to meet his obligation by making payments of $56,000 and he failed to make the necessary payments by July 1, 1988, he would alternatively be required to pay plaintiff the sum of $79,000 by July 1, 1988. If defendant continued to fail to make the annual payments of $56,000, he would then be required to pay additional installments of $79,000 by July 2, 1990, and July 1, 1992, with the balance of the $560,000 obligation due on or before July 1, 1995. In addition, relying on its knowledge of defendant's gross wages and other compensation, the court ordered defendant to pay plaintiff $45,000 per year in alimony until the death of either party or the remarriage of plaintiff. If he elected to make the annual payments of $56,000 described above, defendant would be permitted to reduce his alimony payments by $3,000 per year for the first five years beginning immediately after the first installment until the alimony reached $30,000 per year. An alternative payment-reduction schedule was provided in the event defendant opted to make payments of $79,000 in accordance with the specified dates. The defendant was permitted to retain his interest in the Martin–Copeland profit-sharing plan, which had not realized any value at the time.

In 1988 as a result of the increased financial decline suffered by Martin–Copeland, defendant's salary decreased from $180,000 to $150,000 per year and later was reduced further to $60,000 annually. On December 9, 1988, Martin–Copeland, unable to meet

its financial obligations, ceased operations. The stock, which was the subject of the equitable assignment, was therefore rendered valueless. Both parties stipulated to the fact that the stock was valueless at the time that the first $79,000 installment payment became due. The defendant failed to make his first scheduled payment of $56,000 on or before July 1, 1985, and subsequently failed to make the first alternative payment of $79,000 on or before July 1, 1988.

In light of defendant's failure to pay as ordered, plaintiff filed a motion to adjudge defendant in willful contempt of the terms of the equitable assignment of the stocks in November 1988. On December 4, 1988, defendant filed an objection to plaintiff's motion as well as a motion to modify or suspend payments required under the "assignment provisions of the Final Judgment until such time as the defendant's financial circumstances permit him to do so." The trial justice found that defendant was in contempt for failing to pay the $79,000, that defendant had the ability to pay the $79,000 on or about July 1, 1988, and that the financial circumstances of both plaintiff and defendant had changed, thereby warranting a modification of the judgment. According to the modified terms, defendant's alimony obligations were reduced by $15,000 per year and the payments required under the equitable assignment of stock were suspended until such time as defendant could realize assets from his prior dealings.

The defendant asserts that the trial justice erred in reducing the alimony to $30,000, relying on insufficient findings of fact. Pursuant to G.L.1956 (1988 Reenactment) § 15–5–16, the Family Court may review and alter decrees establishing the amount and payment of alimony. Section 15–5–16(a) provides in pertinent part:

"The decree may be made retroactive in the court's discretion to the date that the court finds that a substantial change in circumstances has occurred; provided however, the court shall set forth in its decision the specific findings of fact which show a substantial change in circumstances and upon which findings of

facts the court has decided to make the decree retroactive."

■ This court has recognized that specific findings of fact do "not require an exhaustive analysis of the evidence or a specific statement of all the reasons for [the judge's] conclusion"; however, the findings must reflect that the trial judge "exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses." *Brum v. Brum*, 468 A.2d 924, 926 (R.I.1983) (quoting *Smith v. Smith*, 119 R.I. 642, 648, 382 A.2d 182, 185 (1978)). It has been established that this court may go beyond the findings enumerated by a trial justice if such findings are challenged as insufficient. In *Lannon v. Lannon*, 86 R.I. 451, 136 A.2d 608 (1957), we determined that when "findings of fact are not set out expressly we will not, for that reason alone, refuse to accord the decision the persuasive force usually accorded such decisions on review." *Id.* at 453, 136 A.2d at 609. In *Lannon* the court "carefully examined the transcript" and determined that the findings of fact were insufficient to warrant the wife's award of divorce. *Id.* at 455, 136 A.2d at 610. We reiterated the *Lannon* standard for reviewing trial justices' findings in *Duke v. Duke*, 510 A.2d 430 (R.I.1986), and *Kenney v. Hickey*, 486 A.2d 1079 (R.I.1985). In *Kenney*, despite the trial justice's failure to establish an explicit change in circumstances, this court reviewed the record and determined that significant changes in circumstances had occurred to support the trial justice's modification of a final decree relating to child custody. *Kenney*, 486 A.2d at 1082–83. Furthermore in *Duke*, when the trial justice failed to state explicit findings of fact to support his decision regarding custody, we examined the record and concluded that it provided "ample evidence to support the trial justice's decision." *Duke*, 510 A.2d at 432. Additionally it has been established by this court that the findings of a trial justice "are entitled to great weight and will not be disturbed on review unless based upon a misconception or oversight of material evidence or otherwise clearly

wrong." *Pasquazzi v. Pasquazzi*, 119 R.I. 554, 555, 381 A.2d 233, 234 (1977). Therefore, we shall not reverse the findings of a trial justice sitting without a jury absent a finding of abuse of discretion, and we retain the authority to examine the record in its entirety to determine whether such an abuse has occurred.

■ The defendant in the present case contends not only that the trial justice failed to make specific findings of fact to support the reduction in alimony but also that the record fails to reflect a change in circumstances relative to the alimony decree. Although the trial justice did not refer to specific instances when he determined that defendant's "circumstances have changed, as have the first wife's, and [t]he [c]ourt will reduce that alimony payment to thirty thousand dollars ($30,000) per year," after reviewing the record, we are of the opinion that the trial justice did not err, and an examination of the record reveals that sufficient changes in circumstances occurred to justify the modification of alimony payments.

With regard to plaintiff the record reveals that since the judgment was entered in 1985, she has remained in the house she received as part of the judgment; she has spent the $26,000 contained in her savings account, borrowed $4,000, and used a $4,000 certificate of deposit. The plaintiff started working in the summer of 1988, earning $200 per month. During the period following the judgment up until the time defendant filed for a modification decree, defendant's circumstances changed as well.

Upon review we find that the record denotes substantial changes in defendant's financial circumstances warranting a reduction in alimony; however, despite defendant's diminished earnings, his financial holdings and present lifestyle suggest that he remains capable of paying alimony in the amount of $30,000 per year. In 1986 defendant earned $180,000 and paid $125,000 for a condominium in Warwick, which he and his new wife occupied. The defendant financed the condominium purchase by paying $60,000 outright and borrowing $65,000 on a personal loan. There was

testimony that a bond for $105,000 matured in December 1987, and two $50,000 bonds were transferred to defendant's second wife in 1986. From January 1, 1988, until December 9, 1988, defendant earned $143,798. Until August 1, 1988, defendant was earning at a rate of $150,000 per year. After August 1, 1988, his earnings were reduced to $60,000 per year. Martin–Copeland had been adjudicated bankrupt under the provisions of chapter 7 of the bankruptcy code, and the stock therefore was of no value at the time defendant filed his motion to modify the alimony decree in December 1988. During this period defendant continued to invest in tax shelters. After noting the downward change in defendant's economic position, the trial justice found that defendant had not lowered his living standard. He continued to pay a mortgage on his mother's house as well as the oil bills, retained his membership at the Squantum Club, and continued to travel for pleasure.

For the reasons stated above, we find that the trial justice's failure to enumerate specific instances of changed circumstances is not fatal to his decision regarding alimony. The record supports a reduction of alimony payments to $30,000 per year; therefore, we affirm the decision of the trial justice regarding this issue.

■ The defendant's contention that the court erred in failing to apply the modified award of alimony retroactively, however, is valid. Pursuant to § 15–5–16(a) the trial justice, upon determining that a change in circumstances has occurred warranting a modification of an alimony decree, may, within his or her discretion, apply such modification retroactively to the date that the change in circumstances occurred. It is apparent from the record that the trial justice was not aware of the current status of § 15–5–16(a) when he determined that he lacked the proper authority to impose the modification of alimony retroactively. It is clear that the trial justice based his decision on this misunderstanding of the statute; therefore, we vacate the trial justice's decision regarding the retroactive modification and remand this issue to the

Family Court for a determination within the discretion of the trial justice.

■ Next we address defendant's contention that the trial justice erred in finding him to be in contempt of the judgment and consequently awarding counsel and accounting fees to plaintiff. It is within the authority of a Family Court justice to require a party to pay counsel and accounting fees pursuant to a finding of willful contempt. *Pires v. Pires*, 102 R.I. 23, 26–27, 227 A.2d 477, 479 (1967); *Harson v. Harson*, 82 R.I. 71, 74–76, 105 A.2d 812, 814–15 (1954); *Ciallella v. Ciallella*, 81 R.I. 320, 326, 103 A.2d 77, 80 (1954). Such an award lies within the discretion of the trial justice. *Fricke v. Fricke*, 491 A.2d 990, 996 (R.I.1985). In light of the findings and considerations set forth above concerning the modification of alimony payments, we are of the opinion that the trial justice did not abuse his discretion in finding defendant to be in willful contempt. The defendant had the ability to pay the alimony as ordered, and "he made no effort to make any payment."

■ Additionally defendant avers that the trial justice erred in failing to excuse defendant from complying with the equitable-assignment provision of the judgment compelling a payment of $79,000 on or before July 1, 1988. The trial justice's assessment of defendant's ability to fulfill the remainder of his obligation is proper. It is clear from the record that the initial judgment provisions regarding the equitable assignment of stock were calculated relying on the value of the stock. Consequently the subsequent devaluation of the stock to its current level affects the ultimate award. The stock was worth $1,400,000 at the time of the original decree, and at the time of the modification it had no value. This substantial change in value of the stock warrants a modification of the judgment suspending the payments until such time as the stocks may regain value. Both plaintiff and defendant must adjust to the substantial changes that have occurred since the original judgment. The defendant, however, is not excused from the July 1, 1988 payment.

In light of the fact that the trial justice suspended the remaining payments due under the equitable assignment, defendant contends that the first payment under that assignment should be suspended accordingly. Although both parties stipulated to the fact that the stock was valueless on July 1, 1988, there is no indication in the record that said stipulation excused defendant from his obligations. In fact defendant did not seek a formal modification of the judgment until December 1988, four months after he had failed to make the $79,000 payment as ordered.

The trial justice applied the contracts principle of impossibility in modifying the equitable assignment. After considering the factors affecting the economic circumstances of defendant, which have been reiterated by this court regarding the alimony modification, the trial justice determined that financially, as of July 1, 1988, defendant not only had an opportunity to begin the scheduled payments but also had the means to pay the initial $79,000. We agree with the trial justice and conclude that the suspension of the remaining payments under the equitable-assignment provision of the judgment does not necessitate a suspension of the first payment.

■ The defendant also asserts that the trial justice erred in modifying the judgment when he considered those tax shelters held by defendant as a potential source of satisfying the debt incurred by defendant as a result of the equitable assignment. In the modification of the judgment the trial justice included the tax shelters maintained by defendant at the time of the trial on the merits of the divorce.

"The equitable-distribution process requires three steps. First, the trial justice must determine which of the parties' assets are marital property and which are nonmarital property. Second, the trial justice must consider the factors enumerated in § 15–5–16.1. Third, he or she must distribute the marital property." *Vanni v. Vanni*, 535 A.2d 1268, 1270 (R.I.1988) (citing *Quinn v. Quinn*, 512 A.2d 848, 852 (R.I.1986)).

According to § 15–5–16.1(b), the trial justice, when modifying a decree for equitable assignment, maintains the authority to take into account those assets considered in the initial assignment of property. Section 15–5–16.1(b) provides in pertinent part:

"The assignment of property once made in a final decree shall be final subject only to any right of appeal which the parties may have. Any assignment made by the family court shall be so regarded as a judgment for debt that suit may be brought or execution may issue thereon for the property due and undelivered or the amount due and unpaid to be shown by affidavits of the person entitled to the same and the attorney of record of the person, the executions to run against the goods and chattels of the husband and wife, as the case may be, and for want thereof against the body; and the court may make all necessary orders and decrees concerning the same."

At the time of the divorce, the tax shelters in question qualified under § 15–5–16.1 as property to be considered for equitable assignment. In fact the trial justice, in issuing the judgment, referenced the tax shelters and assigned the property held therein to defendant. In effect by including the tax shelters in the modification, the trial justice simply provided a second avenue by which defendant's delinquent debt could be satisfied.

We conclude, therefore, that when modifying a decree for equitable assignment, the trial justice may consider those assets that he took into account in the original trial on the merits of the divorce. We note that the trial justice was careful to limit the modified equitable assignment to property that could have been affected at the time of the final judgment. Property acquired after the final judgment is not subject to the modified order.

For the reasons stated, the defendant's appeal is denied and dismissed. Regarding the issue of retroactivity only, the petition for certiorari is granted, and the judgment of the trial justice is quashed. The petition for certiorari is denied in respect to the remaining issues, the writ heretofore issued is quashed accordingly, and the papers in this case are remanded to the Family Court with our decision endorsed thereon.