**Ronald R. DUHAMEL**

v.

**Ann Marie DUHAMEL.**

No. 96–292–Appeal.

Supreme Court of Rhode Island.

Dec. 5, 1997.

Kenneth J. Macksoud, Providence, for Plaintiff,

Renee M. Bevilacqua, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

OPINION

PER CURIAM.

The defendant, Ann Marie Duhamel (the mother), appeals from a Family Court order

denying her motion to modify a previous custody award. Pursuant to that award, her two minor children have been residing in Florida with the plaintiff, Ronald R. Duhamel (the father), the mother's former husband. We ordered both the mother and the father to show cause why we should not decide this appeal summarily. After reviewing their legal memoranda and listening to their oral arguments, we conclude that cause has not been shown and that the appeal can be decided at this time.

The parties' final judgment of divorce entered on March 22, 1990. The court awarded physical possession of the minor children, Ronald, Jr. (date of birth March 3, 1988) and Amanda (date of birth March 3, 1989), to the father, who lives in the State of Florida. The order provided for regular visitation, and in lieu of child support it required the mother to pay for the children's transportation during their visits to her.

In 1994 the father moved to modify the final judgment, seeking child support from the children's mother on the basis that she was then gainfully employed. In response the mother moved to obtain custody of the children on the basis that her present gainfully employed status constituted a substantial change in the circumstances that had existed when the court entered the original custody award. In addition the mother alleged that the children would suffer "irreparable psychological and physical harm" if they remained with their father. She also alleged that the father had threatened to deny her access to the children and was interfering with their relationship.

After a hearing, the trial justice denied the father's request for child support, but he ordered the mother to be financially responsible for one half of any of the children's uncovered or uninsured medical and dental expenses. The trial justice also ordered the father to pay the mother's attorney $300 for legal costs to defend against a "[c]omplaint without merit." The trial justice also ruled, however, that it would be "detrimental" to change the existing custodial placement of the children.

The mother raises two issues on appeal. First, she argues that the trial justice erred by refusing to disturb the status quo in light of this court's ruling in *Sammataro v. Sammataro*, 620 A.2d 1253 (R.I.1993). In *Sammataro* we held that it was a fundamental error of law to base a custody determination on the fact that a parent was receiving assistance from the federal-state Aid to Families with Dependent Children (AFDC) program. *Id.* at 1255. Although it appears that the original custody determination took into account the fact that the mother was then unemployed and receiving public assistance, the trial justice here specifically stated that he would not comment on the prior order because the mother did not appeal from that judgment. Thus the issue before the trial justice was whether it was in the best interest of these children to uproot them from a home and an environment that they had known and, as he determined, in which they had flourished for the preceding five years. In deciding that the children should remain with their father, the trial justice did not give any weight to the fact that the mother had received public assistance in the past.[1] Accordingly this conclusion does not run afoul of our ruling in the *Sammataro* case.

The mother next argues that the trial justice abused his discretion by considering only the children's replies to his inquiries about where they preferred to live. She claims that because the children were only six and seven years old when this question was posed to them, they lacked sufficient intelligence and understanding to express such a preference. The trial justice, she contends, should have placed greater weight on the other custody factors spelled out in *Pettinato v. Pettinato*, 582 A.2d 909 (R.I.1990).

In *Pettinato* we set forth eight factors to be considered and weighed when determining the best interests of the child for the purposes of making a custody award. *Id.* at 913–14. These factors include the wishes of

---

1. The trial justice also noted that he found it suspicious that the mother filed a motion for a change in custody only one month after the fa-

ther had moved to obtain child support from her but five years after the initial custody order.

the parents; the reasonable preference of the child—if the court deems the child to be of sufficient intelligence, understanding, and experience to express such a preference; the child's interaction with parents and siblings; the child's adjustment to home, community, and school; the mental and physical health of everyone involved; the stability of the child's home environment; the moral fitness of the parents; and the willingness and the ability of each parent to facilitate a close relationship between the child and the other parent.

The trial justice here interviewed both children individually in his chambers, and they both expressed the desire to remain in Florida with their father, his wife, and their new baby brother. The trial justice was impressed with their forthright statements and believed that their wishes should be given the greatest consideration. He found that they have "fashioned a life for themselves in Florida," and therefore, he did not believe that it was in their best interests to disrupt this custodial arrangement by any change in physical possession. In *Kenney v. Hickey*, 486 A.2d 1079, 1083 (R.I.1985), we ruled that it has been our policy to afford a child's preference considerable weight. Further, we have stated that determining whether a minor child is competent to testify is a decision that rests primarily with the trial justice, who is in a better position to observe the witness. *Id.* (citing *Brierly v. Brierly*,

431 A.2d 410, 413–14 (R.I.1981)). This decision will not be disturbed unless the record discloses that it was clearly erroneous. *Id.*

Although the seven-year-old child may not have known the name of his school or the name of the city in which he lives and although he testified about having one brother without mentioning his sister, the trial justice was entitled to find his testimony reliable and creditable on the whole. It is also true, as pointed out by the mother, that the six-year-old child stated both that she did not want to live in Rhode Island because she would not then be able to see her younger brother and that she wanted to live wherever he lived. However, we conclude that no evidence exists in the record to suggest that it was clearly erroneous for the trial justice to give considerable weight to the children's preference for continuing to live together in Florida with their father as they had been doing for the previous five years.

For these reasons the defendant's appeal is denied and the order of the Family Court is affirmed.