**Fred A. PARKER**

v.

**Toni J. WILLIAMS.**

**No. 2005–136–Appeal.**

Supreme Court of Rhode Island.

April 24, 2006.

Christopher E. Friel, Esg., for Plaintiff.

Joseph F. Hook, Esq., Middletown, for Dependant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The respondent, Toni J. Williams, appeals from a Family Court order awarding physical placement of the parties' minor child, Dakota, to the petitioner, Fred A. Parker.

On appeal, Ms. Williams argues that the hearing justice erred in exercising jurisdiction because he failed to first make a finding that a change in circumstances had taken place subsequent to the time when the parties reached an agreement regarding custody. Ms. Williams also argues that the hearing justice misapplied the factors set forth in *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990), and that he thereby abused his discretion and was clearly wrong in finding that it was in the best interests of Dakota to reside with Mr. Parker.

This case came before the Supreme Court for oral argument on March 7, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument.

### Facts and Travel

Ms. Williams and Mr. Parker were involved in a dating relationship for approximately eleven years, and they are the parents of one child, Dakota, who was born on August 11, 1996. The parties resided together, along with Dakota and two children of Ms. Williams from a previous relationship, until late October of 2002, at which time Ms. Williams moved out of the residence. It appears from the record that Ms. Williams had started dating an-

other man around that time and that Mr. Parker issued an ultimatum pursuant to which Ms. Williams either would have to stop seeing the other man or move out of the house. Ms. Williams testified that, when Mr. Parker found out that she was still seeing the other man, he told her to take her two children from her previous relationship and leave. Ms. Williams further testified that Mr. Parker told her that Dakota would be staying with him. According to Ms. Williams's testimony, she then left the residence that she had shared with Mr. Parker, and about one month later she moved in with her new boyfriend.

Upon her departure from the residence that she and Mr. Parker had shared, Ms. Williams left Dakota in the care, custody and control of Mr. Parker and made no attempts to remove the child from that residence. Ms. Williams testified that, following her departure from the residence, Mr. Parker never denied her the opportunity to visit with Dakota. According to Ms. Williams's testimony, she saw Dakota only sporadically during the first few months after she and Mr. Parker were no longer cohabitating. She further testified, however, that beginning in January of 2003, based on a schedule upon which she and Mr. Parker agreed, she saw Dakota every other weekend and one day during the week. By contrast, Mr. Parker testified that Ms. Williams's visits with Dakota remained sporadic during the first part of 2003 and that her visits became less and less frequent as the year progressed.

Dakota continued to reside with his father until September 12, 2003, on which date Mr. Parker dropped off Dakota (along with two bags of his clothing) at Ms. Williams's residence. According to the testimony of Mr. Parker, he dropped Da-

kota off at Ms. Williams's residence after an argument between the parties precipitated by Ms. Williams's refusal to take Dakota for the weekend. Mr. Parker testified that, when he dropped Dakota off, he told Ms. Williams: "Look, if you don't start taking him, you know, take him for the weekend, you're going to have him." Dakota commenced living with his mother as of September 12, 2003.

According to the testimony of Ms. Williams, Mr. Parker called her numerous times thereafter in an attempt to visit Dakota, and she responded by leaving a message on his answering machine declaring that he could not see the child "unless it's by way of a court order." Ms. Williams testified that she did not let Mr. Parker take Dakota for visits until some time in November of 2003. Mr. Parker similarly testified that, after September 12, he contacted Ms. Williams in an attempt to see Dakota but she refused to let him see the child. Mr. Parker further testified that Ms. Williams only allowed him to see Dakota "[m]aybe once" in October and twice in November—despite the fact that he called her and went by her house a couple of times a week in an attempt to see Dakota.

In December of 2003, Mr. Parker filed a petition in Family Court seeking, among other things, custody and physical placement of Dakota. The parties thereafter agreed to joint custody of Dakota; and, on November 9, 2004, a Family Court hearing was held with regard to the issue of placement of the child. After this hearing, the Family Court issued an order awarding physical placement of Dakota to Mr. Parker.[1] Ms. Williams has timely appealed from that order.

1. The Family Court order also established the visitation rights of Ms. Williams and directed the parties to prepare a new Child Support Guideline Worksheet so that an appropriate child support order could be prepared. The order further directed Mr. Parker to maintain

On appeal, Ms. Williams argues that the Family Court erred in exercising jurisdiction over this case because the hearing justice did not first find that a change in circumstances had taken place subsequent to the point in time when the parties reached an agreement regarding custody of Dakota. Ms. Williams also argues that the hearing justice misapplied the factors set forth in *Pettinato*, 582 A.2d at 913–14, which factors the Family Court must weigh in determining the best interests of the child, and thus abused his discretion and was clearly wrong in determining that it was in the best interests of Dakota to reside with Mr. Parker.

## Analysis

### I

### The Change in Circumstances Issue

█ Ms. Williams's first argument on appeal is that the Family Court erred in exercising jurisdiction over this matter because the hearing justice failed to first make a finding that a change in circumstances had taken place subsequent to the point in time when the parties reached an agreement about custody of Dakota. In making this argument, Ms. Williams relies upon the following language from this Court's opinion in the case of *Parrillo v. Parrillo*, 554 A.2d 1043 (R.I.1989):

"The Family Court retains jurisdiction over the custody of the minor children of divorced parents regardless of whether custody was initially established by judicial decree or agreement of the parents. * * * However, jurisdiction should only be exercised when the party seeking the

medical coverage for Dakota and ordered that both parties were to contribute to Dakota's uncovered medical, dental and other health-related expenses.

2. In support of her contention that she and Mr. Parker had reached an agreement regarding custody of Dakota on September 12, 2003,

modification shows by a fair preponderance of the evidence that the circumstances and conditions that existed when custody was decided have been changed or altered." *Id.* at 1044–45.

In the instant case, there was no previous judicial decree establishing custody; but Ms. Williams argues that the parties agreed [2] to a custody arrangement as to Dakota on September 12, 2003 and that, therefore, pursuant to the above-quoted language in *Parrillo*, the Family Court could not properly exercise jurisdiction over this matter without first finding that Mr. Parker had demonstrated a change in circumstances after this date.

We shall not address the merits of this contention, however, because our review of the record reveals that Ms. Williams failed to raise this argument at the hearing that was held in Family Court about the placement issue or in her pretrial memorandum to that court. It is well settled that this Court will consider on appeal only issues that were properly raised before the trial court. *Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I.1996) ("A party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal."); *see also Harvard Pilgrim Health Care of New England, Inc. v. Rossi*, 847 A.2d 286, 293 (R.I.2004) ("This Court will not review issues that are raised for the first time on appeal."). Accordingly, Ms. Williams has waived the right to raise this argument on appeal.

### II

Ms. Williams points to an affidavit of Mr. Parker, dated December 11, 2003, which stated, inter alia, that "on or about September 12, 2003, by agreement of the parties, the minor child began to reside with the Defendant, Toni J. Williams."

### The *Pettinato* Factors[3]

Ms. Williams's second argument on appeal is that the hearing justice abused his discretion in determining that it was in the best interests of Dakota to reside with Mr. Parker. Ms. Williams contends that the hearing justice misinterpreted the facts in this case and was clearly wrong in making the placement determination. Specifically, Ms. Williams contends that the hearing justice misapplied the factors that the Family Court must weigh in determining the best interests of the child.

As we have stated, "[f]ew principles are more firmly established in the law * * * than that in awarding custody, placement, and visitation rights, the 'paramount consideration' is the best interests of the child." *Dupre v. Dupre*, 857 A.2d 242, 251–52 (R.I.2004) (quoting *Africano v. Castelli*, 837 A.2d 721, 728 (R.I.2003)). In *Pettinato*, 582 A.2d at 913–14, this Court established a list of nonexclusive factors that must be weighed in determining where the best interests of the child lie in a particular case. *See also Sammataro v. Sammataro*, 620 A.2d 1253, 1254 (R.I. 1993). The following are the factors that this Court set forth in *Pettinato*:

"1. The wishes of the child's parent or parents regarding the child's custody."

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference."

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest."

"4. The child's adjustment to the child's home, school, and community."

"5. The mental and physical health of all individuals involved."

"6. The stability of the child's home environment."

"7. The moral fitness of the child's parents."

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Pettinato*, 582 A.2d at 913–14.

The best interests of a child in a particular case should not be determined by focusing exclusively on any one of these factors; instead, it is incumbent upon the hearing justice to "consider a combination of and an interaction among all the relevant factors that affect the child's best interest." *Id.* at 914; *see also Sammataro*, 620 A.2d at 1254. On appeal, we will not disturb a hearing justice's decision regarding placement of a child unless there has been an abuse of discretion. *Keenan v. Somberg*, 792 A.2d 47, 49 (R.I.2002) ("The determination of the best interests of the child rests within the sound discretion of the trial justice based on all the facts presented and will not be disturbed on appeal absent an abuse of that discretion."); *see also Sammataro*, 620 A.2d at 1254; *Pettinato*, 582 A.2d at 914. We will disturb the findings of fact made by a Family Court justice only if the appellant demonstrates that such findings "are clearly wrong or that the trial justice overlooked or misconceived evidence relevant to the issues decided." *D'Onofrio v. D'Onofrio*, 738 A.2d 1081, 1083 (R.I.1999).

Our careful review of the record in the present case reveals that the hearing justice weighed all of the factors set forth by this Court in *Pettinato* in determining that it was in the best interests of Dakota to reside with Mr. Parker. In his written decision, the hearing justice made explicit

---

3. *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990).

findings of fact with regard to each of the *Pettinato* factors. By way of example, we note that the hearing justice made the following factual findings—each of which weighs, in varying degrees, in favor of awarding physical placement of Dakota to Mr. Parker: (1) that Ms. Williams had "a reduced level of communication" with Mr. Parker and had failed to keep Mr. Parker advised of medical and school issues, while Mr. Parker had "always had good lines of communication with [Ms. Williams] and [had] always kept her advised as to all matters involving the child"; (2) that Mr. Parker had always maintained a relationship, not only with his own son Dakota, but also with Ms. Williams's son from a previous relationship, and had always made sure that Dakota visited with his half-brother; (3) that Dakota always had a good relationship with his father; (4) that, although there was no indication that Mr. Parker had any emotional or physical health issues, Ms. Williams was undergoing counseling for alcoholism and continued to smoke marijuana; (5) that Dakota, who is asthmatic, was exposed to smoking by Ms. Williams's boyfriend, who smoked in the apartment where Dakota resided with his mother; (6) that Ms. Williams chose her boyfriend over Dakota when she left the residence that she shared with Mr. Parker in October of 2002 and rarely saw Dakota thereafter; (7) that Mr. Parker's home environment was stable, while Ms. Williams's home environment was less stable; (8) that Mr. Parker had always been responsible regarding his care for Dakota; (9) that Ms. Williams's boyfriend, with whom she lived, had a negative relationship with Mr. Parker and did "whatever is in his power to undermine the relationship between [Mr. Parker] and Dakota"; and (10) that Ms. Williams had "never been willing or able to facilitate a close and continuous parent/child relationship between Dakota and [Mr. Parker] since the child came to live with [her] on September 12, 2003."

After reviewing the record, we conclude that the hearing justice appropriately applied the factors set forth in *Pettinato* in determining the best interests of Dakota. Our review of the record also discloses that the hearing justice did not overlook or misconceive any relevant evidence in making his placement determination. Accordingly, it is our conclusion that the hearing justice did not abuse his discretion in deciding to award physical placement of Dakota to Mr. Parker.

### Conclusion

For these reasons, we affirm the decision of the Family Court. The papers in this case may be returned to the Family Court.