Belknap
No. 86-525

ANDREW M. RICHELSON

v.

LINDA RICHELSON

December 7, 1987

*Daniel A. Laufer*, of Nashua, by brief and orally, for the plaintiff.

*Brennan Professional Association*, of Manchester (*William E. Brennan* on the brief and orally), for the defendant.

*Carolyn W. Baldwin*, of Concord, by brief and orally, as guardian ad litem for the minor child.

BATCHELDER, J. This case is the culmination of a protracted and acrimonious divorce and custody dispute. The plaintiff appeals an order of the Superior Court (*Manias*, J.), approving the report of the Master (*Stephanie Nute*, Esquire), altering the plaintiff's custodial visitation schedule, imposing child support obligations on him, and requiring him to sign a 1981 amended joint tax return pursuant to a previous order. The plaintiff also accuses the defendant of "master shopping"; that is, excessively litigating the divorce and the child custody issue in order to find a sympathetic master. We affirm.

The procedural history of this case reflects the parties' inability to agree on even the most trivial matters, and their failure to cooperate regarding the raising of their child. The parties were divorced in 1983 and were awarded joint legal custody of their minor child, with the defendant having physical custody and the plaintiff having extensive visitation rights. Each party was held responsible for child support only for the periods that the child spent with that parent. The marital treasury was divided, and, among other features of the property settlement, the parties were ordered to file joint tax returns for the years 1980, 1981, and 1982. Finally, the defendant was ordered not to remove the child from New Hampshire except for temporary periods and under limited circumstances. No alimony obligation was sought or imposed.

In January, 1984, the defendant filed motions for additional orders and for clarification and reconsideration on several grounds, but primarily seeking reconsideration of the travel restriction. The plaintiff also filed a motion to clarify, and for attorney's fees. After noting in his order of February 10, 1984, that the parties' "constant bickering . . . rises to the level of harassment," Master Bruce F. DalPra (the initial master) modified the visitation schedule slightly

and denied plaintiff's request for fees. More significantly, the master refused to modify the restriction which he had placed on the defendant concerning removing the child from the State. In March, 1984, the defendant filed an extensive motion to reconsider and for a hearing on the out-of-state travel restriction. The motion to reconsider was denied, after a hearing, by an order dated July 26, 1984.

On January 9, 1985, the plaintiff filed a motion for contempt and to modify and bring forward. The basis for the contempt motion was the defendant's unilateral decision to enroll the child in a day care center in Medford, Massachusetts. She had been removing the child from the State on a daily basis in apparent violation of the custody decree. The plaintiff also accused the defendant of violating the visitation order. He sought as relief primary physical custody of the child and costs and fees. The defendant answered, and filed a cross petition alleging, *inter alia,* violations by the plaintiff of the court's order relative to filing joint tax returns. The motions were heard before the Superior Court (*Murphy,* J.). In an order dated April 12, 1985, the defendant was found in contempt for removing the child from the jurisdiction, failing to file joint tax returns, and failing to permit the plaintiff to exercise fully his visitation rights. The plaintiff was found not in contempt. The court refused to reconsider the April 12th order, and on appeal this court summarily affirmed that order on October 3, 1985.

Meanwhile, on August 23, 1985, the defendant had filed a motion for relief from the April 12th order with the superior court. Claiming an inability to find a suitable alternative, the defendant re-registered the child in the Medford, Massachusetts day care center's kindergarten program for the 1985–86 school year. The plaintiff objected, and asked the court to find the defendant in continuous contempt, which it did in an order dated March 6, 1986, wherein it levied a $300 fine on the defendant. The court also set May 27, 1986, as a hearing date to determine where the child would begin the first grade in September of that year, and ordered the parties to investigate potential schools and to report to the guardian ad litem, who had been appointed at the outset of the case.

At the May hearing the court heard testimony from the defendant, but, due to time constraints, adjourned the hearing until July 25th; the July hearing was subsequently continued until October 14th because of an emergency resulting in defense counsel's unavailability. In August, the guardian ad litem filed a motion for a temporary order to place the child in the Frost School, a private institution in Derry, and for the plaintiff to have physical custody

during the school week. No hearing was held and no order was rendered on the motion. The child remained with the defendant and matriculated in the first grade in the Salem school district.

At the October hearing, the master heard testimony from the defendant, the plaintiff, the guardian ad litem, and an official of the Frost School. After considering this testimony and reports from the guardian ad litem, psychologists, and counselors, the master ordered the child to be removed from the first grade and placed in the Salem school district's readiness program at the Soule School. The master also reduced the plaintiff's visitation rights to comport with the child's school schedule and ordered the plaintiff to pay fifty dollars ($50) per week in child support. She also ordered the parties to file joint or amended joint tax returns for 1981 and 1982 in order to account for moving expense deductions created by the defendant. The plaintiff appeals this order in every material respect.

The plaintiff argues that the master abused her discretion in substantially reducing his custodial visitation rights, and supports his contention by pointing to several alleged errors resulting in the ordered change in visitation. The plaintiff argues that the master's failure to hold a hearing or to rule on the guardian ad litem's motion for temporary order (in which the plaintiff joined) rendered it a foregone conclusion that the child would remain with the defendant and in the Salem school system, because once the child started school and developed a routine, the master would not order a change. Thus, the result of the October 14th hearing was predetermined.

The plaintiff advances no argument regarding these alleged failures by the master other than that they amounted to an abuse of discretion. Assuming *arguendo* that this is the appropriate standard, the plaintiff's argument nevertheless fails. There is authority for the proposition that a tribunal's failure to exercise discretion when properly requested to do so is in itself an abuse of discretion. *See State v. Gardner*, 139 Vt. 456, 461, 433 A.2d 249, 252 (1981) (failure to exercise discretion with respect to admissibility of evidence of defendant's prior convictions); *Board of Medical Practice v. Perry-Hooker, M.D.*, 139 Vt. 264, 268, 427 A.2d 1334, 1336 (1981) (failure of superior court to exercise discretion with respect to appropriate sanction upon finding of unprofessional conduct). Thus, the master's failure to exercise her discretion and rule on the motion for temporary order, which is unquestionably of a nonfrivolous nature, is seemingly an abuse of discretion.

■ However, there is equal support in the law for the proposition that for an error to be reversible, it must be prejudicial to the party claiming it. *See Appeal of Nationwide Ins. Co.*, 120 N.H. 90, 94, 411 A.2d 1107, 1109 (1980) (doctrine that error must be prejudicial to be reversible applies to decisions of an administrative agency); *cf. Thayer v. Thayer*, 119 N.H. 871, 874, 409 A.2d 1326, 1328 (1979) (even if court erred, error was *de minimis* and did not constitute reversible error). At the October 14th hearing, the master articulated on the record her reasons for not ruling on the motion for temporary order. She stated that there were no hearing dates available until the following January, and that she could not make what would have amounted to a dispositive ruling without a hearing and without the benefit of all of the evidence. The master would have had no alternative but to deny the order, and that would have left the plaintiff in no better position than he is in right now. Although we see some merit in the plaintiff's argument that the result of the October 14th hearing was predetermined, we think that he brought on some of his own misfortune by not joining in the guardian's motion for temporary order until late August, only a few days before the start of the school year. Thus, even if there was error, the plaintiff was not prejudiced by it.

The plaintiff also argues that the master ignored the recommendations of the guardian ad litem in making her ruling. Both the plaintiff and the guardian ad litem assert that this was error, and that greater weight should have been given to the guardian ad litem's recommendations because of the unique role of the guardian ad litem in representing the best interests of the child.

Pursuant to the court's request, the guardian ad litem submitted a report and recommendations regarding the child's relationship with each parent and her educational needs. The guardian ad litem testified that it was her opinion that the defendant had engaged in a pattern of conduct designed to destroy the child's relationship with her father. There was other testimony concerning the respective abilities of each parent to care and to provide for the child. The guardian ad litem testified that keeping the child in the Salem schools would require busing and an after-school babysitter. The Frost School in Derry apparently would require neither. Moreover, the guardian ad litem and a Frost School official believed that the Frost School would provide the most stable and beneficial environment for the child. Based on these and other considerations, the guardian ad litem recommended that the child be placed in the Frost School, and that physical custody be granted to the plaintiff while the child was in school.

Both the plaintiff and the guardian ad litem concede that there are no provisions in either statutory or case law in New Hampshire to support the proposition that the guardian ad litem's report and recommendation should be given greater weight than any other evidence. Indeed, neither cites to any authority directly supporting such a proposition. Their argument rests in what they consider a logical inference to be drawn from the language and spirit of the statutory provisions.

RSA 458:17-a, I, provides for the appointment of a guardian ad litem in contested divorce cases to represent the best interests of the child. Paragraph II provides further that the guardian ad litem "shall be a full party to the proceedings and shall have such rights as other parties . . . ." RSA 458:17-a, II. The role of the guardian ad litem is primarily to be an advocate for the best interests of the child, and to assist the court and the parties in reaching a prompt and fair determination, while minimizing the bitterness in this process. *Place v. Place,* 129 N.H. 252, 256, 525 A.2d 704, 706 (1987) (citing *Provencal v. Provencal,* 122 N.H. 793, 796–97, 451 A.2d 374, 376–77 (1982)). We have also held, with respect to our standard of review in these cases, that "such conflicts as might be found in the testimony, questions about the credibility of witnesses, and the *weight to be given testimony are for the master to resolve.*" *Parker v. Parker,* 122 N.H. 658, 662, 448 A.2d 414, 416 (1982) (quoting *Ballou v. Ballou,* 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978)) (emphasis added). It has likewise been said that the "guardian ad litem's report is not binding on the judge or master because the difficult decision regarding custody must be made on the basis of *all the evidence.*" C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 223, at 199 (1982) (emphasis added).

Consideration of these authorities reveals that the recommendations of the guardian ad litem do not, and should not, carry any greater presumptive weight than the other evidence in the case. The guardian ad litem is appointed to represent the best interests of the child, not to make a conclusive or presumptive determination; that is the province of the court or master.

This conclusion does not undermine or minimize the role of the guardian ad litem, nor does it suggest that the guardian ad litem's representative capacity is insignificant to the determination of custody arrangements. On the contrary, this conclusion emphasizes the importance of the guardian ad litem as an advocate.

Plaintiff argues further in this regard that the master not only did not adopt the recommendations of the guardian ad litem, but also did not even mention the guardian ad litem's recommendations in her report. We do not think that this is the same as saying that the master did not consider the guardian ad litem's recommendations. Moreover, the master was under no obligation to give extra weight to the guardian ad litem's recommendations. Indeed, since she did not adopt the guardian's recommendations, it is clear that the master did not consider them to be in the best interests of the child.

The issue distills to whether the master abused her discretion in ordering that the child remain in the Salem school district and in altering the plaintiff's visitation rights. In a child custody determination, the court is required to make such decree as shall be most conducive to the child's benefit. RSA 458:17, I; *Stanley D. v. Deborah D.*, 124 N.H. 138, 142, 467 A.2d 249, 250 (1983). With respect to this determination, the "paramount and controlling consideration is the overall welfare of the child[ ] involved." 124 N.H. at 142, 467 A.2d at 250 (citing *Del Pozzo v. Del Pozzo*, 113 N.H. 436, 436, 309 A.2d 151, 152 (1973)). We will not overturn a master's findings and rulings unless they are unsupported by the evidence. *Houde v. Beckmeyer*, 116 N.H. 719, 721–22, 366 A.2d 504, 506 (1976). With respect to the alteration of the visitation schedule, there again must be a clear abuse of discretion before we will upset a master's decision. *Sanborn v. Sanborn*, 123 N.H. 740, 747, 465 A.2d 888, 893 (1983). The overriding consideration with respect to visitation is the greatest good of the child. *Houde v. Beckmeyer*, *supra* at 721, 366 A.2d at 506.

The record amply supports the master's ruling that the child should remain with the defendant and attend the readiness program in the Salem school district. The master found that the child had developed a familiar routine in an environment where she has friends and playmates, and that she needs a more regular and less hectic schedule than the previous visitation order permitted. The master also found that the child was in need of readiness training for the first grade, in that she was younger than most first graders, was developmentally immature, and needed additional work on her fundamental manual skills. It was further noted that she was experiencing difficulties, frustration, and fatigue. It is clear that the master's ruling was in the best interests of the child, and that it is supported by the evidence. Thus, there was no abuse of discretion.

It is equally clear that the alteration of the visitation schedule was not an abuse of discretion and that overriding consideration was given to the greatest good of the child. *Houde v. Beckmeyer supra.* The record would support an inference that the child's difficulties in school, including frustration and fatigue, were due in part to her rigorous schedule. At the age of six, the child was forced to maintain a five-day school week schedule as well as a regular and rigorous visitation schedule. The master's ruling, bringing the visitation schedule in line with the child's school schedule, was eminently reasonable and unquestionably in the best interests of the child. We see no abuse of discretion.

The plaintiff asserts, finally, that the master's ruling was spawned by the erroneous concern that the master could not order the child to attend a private school against the wishes of one of the parents. This case does not, however, clearly present the question whether the court or master has the authority to order enrollment in private school, and under what conditions. A careful reading of the master's order reveals that even though she had concerns about her jurisdiction to order enrollment in a private school, she gave ample alternative reasons for not ordering the child to attend the Frost School as recommended by the guardian ad litem and requested by the plaintiff. The master noted that the child has no need for any specialized private school training. She found that the child was bright and verbally precocious, and is in no way learning disabled. We note that the master ordered the readiness program simply because the child was younger than most first graders and needed extra attention in certain skills. Moreover, the master specifically rejected the Frost School as new and untried, and for lack of a basis upon which to judge its effectiveness. Furthermore, enrollment at the Frost School would have required a *de facto* change in custodial visitation, which was otherwise unwarranted on the evidence. Finally, the master was of the opinion that neither parent could readily afford the $4400 annual tuition at the Frost School. Thus, even if the master had the authority to order private school attendance in this case, and we are not deciding that she did, it is clear that she would not have done so.

The plaintiff alleges as further error that the master abused her discretion in awarding child support in the amount of fifty dollars ($50) per week. The plaintiff argues that since the original order imposed no child support, and since the defendant continues to earn more than twice the income of the plaintiff, there has not been any change in circumstances as required under *Noddin v. Noddin,* 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983). The defendant argues, on

the contrary, that the change in custodial visitation places the child with the defendant for a greater amount of time. Therefore, the defendant asserts that her financial burdens have increased, and that it would be unfair to force the defendant to bear the entire burden of the increased costs. Also, the plaintiff now is better able financially than he was in 1983 to help provide for the child. Hence, the defendant maintains, there are sufficient changes in circumstances rendering the prior child support decree unfair and justifying the imposition of support payments.

■■ The parties have correctly articulated the standards for modification of child support awards. To obtain a modification of support obligations, the defendant must show such a change in circumstances of the parties as to make the continuance of the original order "improper and unfair." 123 N.H. at 76, 455 A.2d at 1053 (quoting *Fortuna v. Fortuna*, 103 N.H. 547, 548, 176 A.2d 708, 709 (1961)). A modification of a support order "will be set aside only if it clearly appears on the evidence that there has been an abuse of judicial discretion." 123 N.H. at 75, 455 A.2d at 1053 (quoting *Douglas v. Douglas*, 109 N.H. 41, 42, 242 A.2d 78, 79 (1968)).

■ Under these circumstances, it cannot be said that the master abused her discretion in awarding child support. The modification of the custody decree to comport with the child's school schedule, and apparently to alleviate the debilitating effects of the previous, more rigorous visitation schedule, places the child under the defendant's immediate care for most of the time. There are necessarily attendant increases in financial responsibility. Furthermore, the record would support the finding that the child's material needs are greater now than at the time of the original order when she was three years old. Moreover, the record would also support the finding that the plaintiff is now in a better position financially than he was to contribute to the costs of the child's care. He has an increased salary, and has remarried, and his present wife apparently makes significant contributions to the expenses of their new household.

The final issue involves that portion of the original property settlement requiring the parties to file joint or amended joint tax returns for the years 1980, 1981, and 1982. The parties have performed as ordered with respect to the 1980 and 1982 returns, but have been uncooperative regarding the 1981 return. Indeed, the defendant was held in contempt in the April 12, 1985 order for not signing the return. She has now restructured the 1981 amended return and has asked the court to order the plaintiff to sign it.

The plaintiff contends that it was error for the master to preclude testimony showing that the issue of the 1981 tax return had been settled by the earlier contempt order. He asserts that it was error for the master to ignore the previous order and to direct him to sign the amended return. He claims that the order amounted to a modification of the property settlement, which is otherwise only available upon a showing of fraud, and which is not subject to judicial modification on account of changed circumstances. *Stebbins v. Stebbins*, 121 N.H. 1060, 1063, 438 A.2d 295, 297 (1981). The defendant, on the other hand, maintains that the master was simply directing the parties to do what they had originally been ordered to do.

The record is not clear on the circumstances surrounding the 1981 tax return. Apparently, the defendant incurred deductible moving expenses which she sought to reflect in the 1981 return, but which were not so reflected. Having refused to sign the return absent the deductions, the defendant was held in contempt. She had another return prepared which included the deductions and sought the plaintiff's signature. The present order mandates how the deductions are to be treated, and orders signatures by both parties.

 Despite the plaintiff's contentions, we do not view the court's order as ignoring the original decree and subsequent finding of contempt. The present order simply reiterates the requirements of the original decree and determines how the moving expense deductions are to be treated. This order is unaffected by the previous finding of contempt. That contempt finding did not direct the defendant to sign the first 1981 return; it simply held her in contempt of the original order for not signing it. The master's order was not a modification of the property settlement under *Stebbins*. Indeed, it was entirely proper and consistent with the original decree.

With respect to the so-called "master shopping" issue, we will say only that it was nowhere raised in the record below, and that since the issue was not preserved, it cannot be raised for the first time on appeal. *Dubois v. Dubois*, 122 N.H. 532, 536, 446 A.2d 1181, 1183 (1982).

In conclusion, we view the master as having been in the unenviable position of seeing to the best interests of the child while the parties were carrying out their respective strategies to defeat one another. The plaintiff contends that this case illustrates the court system's inability to deal effectively with domestic relations problems. Admittedly, the system has its weaknesses, but these weaknesses would be minimized if adversaries would use the

148

system to benefit their children instead of attempting to manipulate it to benefit themselves. We refuse to find error in the master's handling of this case.

*Affirmed.*

All concurred.