Michael G. SUDDES

v.

Linda S. (Suddes) SPINELLI.

No. 96–27–Appeal.

Supreme Court of Rhode Island.

Nov. 26, 1997.

Michael G. Suddes for Plaintiff.

William F. Holt, Cranston, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The Family Court's refusal to modify a prior custody award is the target of this appeal. The plaintiff, Michael G. Suddes (Suddes), appeals pro se from a Family Court order denying his motion to modify a joint-custody decree giving physical possession of his three children to his former wife, the defendant, Linda Suddes Spinelli (Spinelli). Discerning no abuse of discretion in the denial of this motion, we affirm—except in regard to that portion of the order that requires Suddes to obtain professional counseling as an alternative precondition to allowing him any visitation with his children.

Suddes and Spinelli married in 1979 and divorced in January 1992. With Suddes's consent, the Family Court awarded both parents joint custody of their three children[1] but gave physical possession of the children to Spinelli. Because of hostilities between the parties during and after the marriage, the final divorce decree also empowered Spinelli to exercise sole discretion in making decisions concerning the children's health, education, and welfare.

In March 1993, approximately fourteen months after entry of the divorce decree, Suddes filed a motion to modify the custody arrangements. He alleged that the circumstances pertaining to the children's proper care, custody, control, and upbringing had changed and that Spinelli should no longer be allowed to have custody and physical pos-

session of the children. As grounds for his motion, Suddes contended that not only was he the better and proper parent to have custody and physical possession of the children, but it would also be in their best interests for the custody order to be modified as he had requested.

While this motion was pending, Spinelli filed an emergency request for a restraining order and other temporary relief. A Family Court justice entered an ex parte order preventing Suddes from interrogating the children about court proceedings or custody issues involving their mother and from making derogatory remarks about her. The order also barred Suddes from having any contact with the children unless he first obtained professional counseling.

Thereafter, on eleven occasions between October 1993 and January 1995, the Family Court heard testimony on Suddes's motion to amend the custody arrangements. On January 30, 1995, it entered a final decision denying Suddes's motion and noted the substantial animosity existing between Suddes and Spinelli. The court concluded that if Suddes had been willing to participate in counseling as ordered, the parties' past and present relationship might have been much less confrontational. Indeed, because he has refused to participate in counseling unless he is first allowed to obtain physical possession of the children, Suddes has not visited with or seen any of his children since 1994.[2]

The court then reaffirmed its prior award granting joint custody of the children to both parties but again left the children in Spinelli's physical possession. The court also continued that portion of the previous order calling for supervised visitation and/or enrollment by Suddes in an appropriate professional counseling program to help him deal with his anger as a precondition to visitation.

The Family Court has jurisdiction to render a child-custody determination pursuant to the Uniform Child Custody Jurisdiction Act, G.L.1956 § 15–14–4. *See also King*

---

1. The three children are: Catherine, born January 20, 1981; Courtney, born February 24, 1984; and Michael, born December 5, 1988.

2. Spinelli and the children moved to Connecticut in 1994, and Suddes has lived in Massachusetts since March of 1997.

*v. King,* 114 R.I. 329, 330–31, 333 A.2d 135, 137 (1975). This court reviews the Family Court's denial of a motion to modify a prior custody award to determine whether an abuse of discretion has occurred. *See Mattera v. Mattera,* 669 A.2d 538, 541 (R.I.1996). If the Family Court has properly considered what custody arrangements are in the best interests of the children, we will not disturb such a discretionary decision. *See Maroney v. Maroney,* 644 A.2d 827, 827–28 (R.I.1994) (citing *Cok v. Cok,* 479 A.2d 1184, 1189 (R.I. 1984)). Moreover, before a final custody decree can be reopened or amended, the moving party must establish by a fair preponderance of the evidence that the conditions or circumstances existing at the time the decree was entered have so changed that it should be modified in the interest of the children's welfare. *See Parrillo v. Parrillo,* 554 A.2d 1043, 1044–45 (R.I.1989). Until and unless the moving party meets this burden, the prior custody award should remain intact. *See Kenney v. Hickey,* 486 A.2d 1079, 1082 (R.I.1985).

■ Our review of the record shows that Suddes failed to prove a sufficient change in circumstances from those that existed when the court entered the divorce decree in 1992. Despite Suddes's concerted efforts to disparage his former wife's character and notwithstanding the Family Court's own negative assessment of Spinelli's credibility, we conclude that the Family Court made a thorough review of the testimony and the evidence and did not misconceive or overlook anything in the record. Although the Family Court had trouble believing Spinelli's testimony, other evidence in the record supports its ultimate decision to deny Suddes's motion to amend the custody award. Among other things the record indicates that Suddes threatened to "write off" the children for good until they became adults if the court forced him to obtain counseling as a condition of placing

them in his physical possession. In addition he told his young daughter about his affair with another woman and about Spinelli's having had an abortion earlier in their marriage. He even alluded ominously to the fate of Nicole Simpson in describing his custody battle with his former wife.[3] In light of all the evidence in the record supporting its determination, we have no reason to conclude that the Family Court abused its discretion in deciding to keep the prior custody decree intact.

■ However, that portion of the Family Court order requiring Suddes to obtain professional counseling as an alternative precondition to allowing him any visitation with his children shall be stricken. Given Suddes's previous confrontational encounters with psychologists and other professional counselors and his uncooperative approach to such counseling, it does not appear to us that a mandate requiring him to obtain additional counseling of this sort is a reasonable precondition for allowing him to have any visitation rights with his children.

■ It is well settled that the foremost consideration in the determination of visitation rights is the best interests of the children and that any other consideration is secondary to the children's "intellectual, moral, physical, and spiritual well-being." *See Burrows v. Brady,* 605 A.2d 1312, 1315 (R.I. 1992). Visitation rights are to be strongly favored and will be denied only in an extreme situation in which the children's physical, mental, or moral health would be endangered by contact with the parent in question. *See Seravo v. Seravo,* 525 A.2d 922, 926 (R.I. 1987). Here the evidence does not indicate that the physical, mental, or moral health of Suddes's children would be endangered by affording Suddes the right to have super-

---

**3.** Suddes's anger-laden and command-and-control approach to obtaining custody of his children is indicative of why the record is sufficient to support the Family Court's denial of his motion to modify the custody award. He told a court-appointed psychologist: " 'If I don't get physical custody [of the children] and if the court insists I have therapy, I'll write them off * * *. I will say that I only have children from my second

marriage until they're 18. I hate [Chief Judge] Jeremiah and the two sleazebag attorneys * * *. I want custody not visitation * * *. I'll end up in the ACI [prison] because my dialogue with them is inevitable * * * [D]o you know what some would do? * * * [A]sk Nicole Simpson's family. * * * I resent you telling me how I would be with this."

vised visitation with his children [4]—irrespective of whether he obtains additional counseling to help him cope with the bitterness he harbors toward his former wife and any judges and attorneys involved in his divorce proceedings. Moreover, it is not apparent how compelling Suddes to undergo further counseling would materially serve the best interests of the children. Although the record clearly reflects Suddes's ill will toward Spinelli, it reveals no such animosity between Suddes and his children. To deprive the children of any interaction and interrelationship with their father—as has been done here with Suddes for the last four years or so—may in fact adversely affect their best interests.

For this reason the appeal is denied, the Family Court's order is affirmed (except for striking the counseling requirement as an alternative precondition to the plaintiff's obtaining any visitation with his children), and the papers in the case shall be remanded to the Family Court so that a new order may be entered consistent with this decision.

---

**4.** If the supervised visitation proves to be successful for a period of time deemed reasonable by the Family Court, Suddes can then apply to that court for the right to have unsupervised visitation with his children.