Maureen E. D'ONOFRIO

v.

David P. D'ONOFRIO.

No. 98–149–Appeal.

Supreme Court of Rhode Island.

Oct. 21, 1999.

Louis M. Pulner, William J. Lynch, Providence, for plaintiff.

Lauren E. Jones, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case concerns the evidentiary significance of a guardian ad litem's report in a dispute involving a requested change in the physical placement of a divorced couple's child. The plaintiff, Maureen E. D'Onofrio (mother), appeals from a Family

Court order denying her motion for a change of physical possession concerning the minor child of her marriage to the defendant, David P. D'Onofrio (father). We ordered the parties to show cause why we should not decide this appeal summarily. None having been shown, we proceed to do so.

The parties divorced in 1996. Pursuant to a January 1996 decision pending entry of final judgment, the Family Court awarded custody of the minor child to the mother and the father jointly, but physically placed the child with the mother. At that time both parties resided in this state. Prior to the entry of the final-divorce judgment in May 1996, the mother decided to move to England to reside with one Michael Tierney, her soon-to-be husband. As a result of the mother's relocation outside the country, the mother and the father agreed that the interlocutory decree would be amended to award custody to both parents but with physical placement of the child given to the father in Rhode Island, subject to extended visitations with the mother. In May 1996 a final judgment reflecting these changes entered, and the mother remarried in July.

Thereafter, in October 1996, the mother filed a motion to change these custody arrangements, requesting that she be awarded physical placement of the child. The mother further petitioned that she be allowed to relocate with the child to England. Despite the fact that just five months prior to the filing of this motion the final divorce decree provided that the father was to assume parental care and responsibility for the child in Rhode Island, the mother alleged that the child's

maternal grandmother, who also resided in this state, had been and remained the child's primary caretaker.[1] In November 1996, before a hearing on the mother's motion, an order entered appointing a guardian ad litem for the child.

At the hearing on the mother's motion for a change in the parties' physical possession of the child, the court heard from numerous witnesses. In his 1997 decision the trial justice recognized that in addition to seeking a change in the physical possession of the child, the mother also wanted to relocate with the child to England. He stated that he had considered the evidence presented, as well as the applicable statutory and case law. The trial justice found that the mother, in moving to England, "made, what was undoubtedly a very difficult decision to at least temporarily put her romantic interest ahead of her child's interest." The court also found that the father had provided a stable and consistent life for the child. Recognizing that the mother had the burden of proving a substantial change in circumstances since the entry of the final judgment, the trial justice concluded that "there is not a substantial change in circumstances justifying a change in physical possession." An order embodying this ruling entered in September 1997, and the mother filed a timely notice of appeal.

On appeal the mother asserts that the trial justice disregarded the testimony and the recommendation of the court-appointed guardian ad litem (guardian) that the child's best interests would be served by living with her mother in England. The mother disputes the trial justice's findings

1. At the hearing on the mother's change-of-physical-possession motion, the guardian ad litem testified on direct examination that, since the May 1996 final judgment, the child was spending four nights per week at the maternal grandmother's home. It was argued both in the mother's brief and in her oral argument to this Court that this factor contributed to a substantial change in circumstances justifying a change in the custody order. It is important to note, however, that

during cross-examination of the guardian ad litem, she testified that the child routinely spent up to two nights per week with the maternal grandmother even before the final judgment had entered. Thus the maternal grandmother's substantial role in caring for the child was known to the mother when she agreed to the child's physical placement with the father and when the final divorce decree entered containing this physical-placement provision.

and suggests that the trial justice should have given more weight to the guardian's testimony and that he abused his discretion in having failed to do so.

 In this state no statutory mandate requires the appointment of a guardian ad litem in child-custody disputes. *See* G.L.1956 § 15–5–16.2(c) ("[t]he court may, if in its discretion it deems it necessary or advisable, appoint an attorney or a guardian ad litem to represent the interest of a minor or dependent child with respect to his or her \*\*\* custody"). Rather, a "trial justice has the inherent power to appoint a guardian ad litem whenever it appears that there are interests of a minor to be protected." *Parrillo v. Parrillo*, 495 A.2d 683, 686 (R.I.1985) (citing *Zinni v. Zinni*, 103 R.I. 417, 421, 238 A.2d 373, 376 (1968)). Pursuant to an order of the court entered in January 1997, a guardian was appointed in this case "to interview the defendant and plaintiff's mother for purposes of presenting to [the Family] Court a report on the health, welfare and living arrangements for the parties [*sic* ] minor child Jordan." By agreement of the parties, the court appointed an attorney to serve as the guardian. In February 1997 the court entered an order directing the guardian to travel to England to conduct a review of the mother's living arrangements to assist the court in evaluating whether to allow the child to move to England to join her mother.

At the hearing the guardian testified that as part of her investigation, she interviewed the parents, the grandparents, teachers, and the minor child. She also testified about the abilities of each parent to care for the minor child, relying upon her conversations with the parties. Despite the father's having physical possession of the minor child, the child spent a significant amount of time with the maternal grandmother, because of the father's work schedule. The guardian also noted that the child had expressed the desire to stay in one place, as opposed to shuttling between her father's and her grandmoth-

er's homes. According to the guardian, both the father and the maternal grandmother demonstrated considerable hostility toward the mother's remarriage.

In April of 1997 the guardian accompanied the child on a visit to her mother's home in England. According to the guardian, the child had been vacillating between wanting to live with her mother and wanting to remain with her father. However, once in England, the child told the guardian that she definitely wanted to live in England with her mother. She also told the guardian that she liked staying in one place. The guardian also recognized that the mother was concerned about her former husband's ability to foster a relationship between herself and the child because of her former husband's perceived hostility toward her present spouse.

 This Court's review of a child-custody award is limited to whether the trial justice abused his or her discretion. *Pettinato v. Pettinato*, 582 A.2d 909, 914 (R.I.1990). Unless the moving party can show changed circumstances from those that existed when the court made its previous custody decision, a trial justice should not modify a custody decree. *Suddes v. Spinelli*, 703 A.2d 605, 607 (R.I.1997). The moving party has the burden to demonstrate this change and it must be shown by a preponderance of the evidence. *Parrillo*, 495 A.2d at 686. Moreover, we have stated that we shall not disturb findings of fact made by a Family Court justice unless the individual taking the appeal can show that such findings are clearly wrong or that the trial justice overlooked or misconceived evidence relevant to the issues decided. *Lembo v. Lembo*, 677 A.2d 414, 417 (R.I.1996).

 In this case the court-appointed guardian's limited role was to interview the relevant participants and to conduct an investigation of the parties' respective living arrangements. Although the guardian's report also included recommendations, the trial justice was not obliged to

act on them. At the hearing the court ascertained from the guardian only the facts regarding the health, welfare, and living arrangements relating to the physical-placement issue. In fact the trial justice sustained the husband's objections to the mother's attempts to elicit the guardian's recommendations, stating that "until *I make the custody decision,* I'm not going to do that." (Emphasis added.)

■ In this state, no law requires that a guardian's recommendations and/or report should carry greater weight than any other evidence presented. On the contrary, here, as in other jurisdictions,

> "The recommendations of the guardian ad litem do not, and should not, carry any greater presumptive weight than the other evidence in the case. The guardian ad litem is appointed to represent the best interests of the child, not to make a conclusive or presumptive determination; that is the province of the court or master." *Richelson v. Richelson,* 130 N.H. 137, 536 A.2d 176, 180 (1987).

■ In our opinion "[t]his conclusion does not undermine or minimize the role of the guardian ad litem, nor does it suggest that the guardian ad litem's representative capacity is insignificant to the determination of custody arrangements." *Id.* It should be noted, however, that the State of Rhode Island does not require any special training, background, qualifications, or particular expertise of a guardian-ad-litem candidate before such an individual can be selected to serve in this capacity. In this case, even though the court-appointed guardian was an attorney with experience in family law, she was not a child psychologist or some other child-care expert. And whereas some guardians ad litem may possess special expertise that might lend greater evidentiary weight to their testimony and reports, no such result follows as a matter of law.

Here, the trial justice stated that he had considered all the evidence presented in this matter, as well as the applicable statutory requirements and case law. In so doing, the trial justice concluded that the plaintiff had not met her burden to establish a substantial change in circumstances since the entry of the final divorce judgment. Notwithstanding the court's failure to mention the guardian's report in its decision, we are persuaded that the trial justice considered all the evidence presented, including the guardian's report, and we do not conclude that the court overlooked this evidence merely because its decision does not refer to it specifically. Indeed, because the trial justice did not believe that there had been any showing of changed circumstances warranting a modification in custody and because the guardian's report did not address this issue, the trial justice had no cause to refer to it in rendering his decision. In any event, the court was not required to give the guardian's report any more weight than any other evidence presented.

On the basis of the foregoing, we deny and dismiss the plaintiff's appeal and affirm the Family Court's order.