Anita B. LOGAN

v.

Jeffrey S. LOGAN.

No. 99–134–Appeal.

Supreme Court of Rhode Island.

Dec. 12, 2000.

David J. Strachman, Deborah Miller Tate, Providence, for Plaintiff.

Albert J. Mainelli, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on November 8, 2000, pursuant to an order directing both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

Jeffrey S. Logan (husband) and Anita B. Logan (wife) were divorced on August 4, 1997. The Family Court awarded both parties joint custody of their daughter, Samantha Grace Logan (Samantha or daughter). Samantha was four and a half years old at the time of the divorce. Physical possession of Samantha was given to the wife. However, the husband was given extensive visitation rights. The custody award provided that:

> "[t]he Husband shall have all reasonable rights of visitation with the minor child to include the following: The Husband shall have the minor child in his possession each weekend from Thursday afternoon commencing at 3:30 p.m. overnight to Sunday at 1 p.m. In the event the Wife has a family function or desires to visit with her parents out of state on any particular weekend with the minor child, she shall notify the Husband and arrangements shall be made for exchanging periods of time for that portion of any particular weekend the Wife wants to spend with the minor child. The Wife shall give the Husband as much advanced notice as possible regarding a particular weekend, and it is contemplated between the parties that the Wife may request to spend a portion of a weekend with the minor child several weekends per year."

The agreement essentially gave the husband three nights per week with Samantha, while the wife had Samantha for four nights.

Approximately one year after entry of the divorce decree, the husband filed a motion to modify custody. The husband argued that the wife was involved in a new

relationship, in which she was living with her then-fiancé, and that, at age five and a half, Samantha's "sense of values and her understanding of what's right and wrong" were being adversely affected by the wife's behavior. On November 9, 1998, the case was heard before the Chief Judge of the Family Court. He denied the husband's motion, stating:

"I think your motion is frivolous. I am very close to awarding counsel fees in this matter. I will not do it. Here is what happened. We have one poor child. [A][m]other and father who can't talk to each other. It is obvious[.] [T]hey send messages to each other. If there is [an] event[ ] that will happen in Connecticut, mother will not know about it because she won't go because father won't allow it. The biggest problem [is the] father and mother won't communicate. [There] [i]s no change of circumstances that will make this Judge change the present order in this case. [The][p]resent final judgment will stand. Your motion is denied."

The husband appealed. He argued that the trial justice erred as a matter of law in not amending the custody order.

▮▮▮ "The Family Court has jurisdiction to render a child-custody determination pursuant to the Uniform Child Custody Jurisdiction Act, G.L.1956 § 15–14–4." *Suddes v. Spinelli*, 703 A.2d 605, 606 (R.I. 1997). "This [C]ourt has held that child-custody awards must be made in the 'best interest[s]' of the child." *Pettinato v. Pettinato*, 582 A.2d 909, 913 (R.I.1990) (quoting *Petition of Loudin*, 101 R.I. 35, 39, 219

A.2d 915, 918 (1966)). "[T]he best interests of the child standard remains amorphous and its implementation has been left to the sound discretion of the trial justices." *Id.* Several factors must be taken into consideration when making a best interests of the child determination. *See id.*[1] However, no single factor is determinative; rather "[t]he trial justice must consider a combination of and an interaction among all the relevant factors that affect the child's best interests." *Id.* at 914.

▮▮▮ In reviewing the Family Court's denial of a motion to modify a prior custody award, this Court is limited to making a determination of "whether an abuse of discretion has occurred." *Suddes*, 703 A.2d at 607. "If the Family Court has properly considered what custody arrangements are in the best interests of the children, [this Court] will not disturb such a discretionary decision." *Id.* "Moreover, before a final custody decree can be reopened or amended, the moving party must establish by a fair preponderance of the evidence that the conditions or circumstances existing at the time the decree was entered have so changed that it should be modified in the interest of the children's welfare." *Id.* "Until and unless the moving party meets this burden, the prior custody award should remain intact." *Id.*

Our review of the record shows that the husband failed to prove a sufficient change in circumstances from those that existed when the Family Court entered the divorce decree in 1997. Neither Samantha's increase in age, nor the wife's living with

---

1. Among the factors the court must consider are the following:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990).

her fiancé were sufficient to require a modification of the earlier custody award.

Similarly, unlike *Parrillo v. Parrillo,* 554 A.2d 1043 (R.I.1989), in which this Court upheld the Family Court justice's prohibition of unrelated male overnight visitors at the wife's residence while her children were present, in this case, the wife intended to marry her fiancé. Furthermore, there was no evidence presented that the wife's relationship was "not conducive to [the daughter's] general well-being, at least in terms of [the daughter's] psychological welfare." *Id.* at 1044. Moreover, the husband acknowledged that he himself was guilty of the same type of conduct of which he accused his wife. He admitted that, at the time of the hearing, his two children from his current wife were three and a half and two years old, despite the fact that he had been divorced from the wife only twelve months earlier. Equity dictates that the husband be precluded from utilizing the very same conduct that he himself had practiced for at least three years before the conclusion of the divorce proceedings to deprive his wife of physical custody of Samantha. *See Gross v. Glazier,* 495 A.2d 672, 675 (R.I.1985). Although we disagree with the trial justice in his comment that the husband's motion to modify custody was frivolous, the trial justice of the Family Court did not abuse his discretion in denying the husband's motion to modify the previous custody award.

For the reasons stated, the husband's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Family Court.