**Richard L. GALLAGHER**

v.

**Karen DUTTON.**

**No. 2000–172–Appeal.**

Supreme Court of Rhode Island.

Feb. 20, 2006.

Nicholas Colangelo, Cranston, for Plaintiff.

Karen Dutton, Defendant pro se.

**O R D E R**

The defendant, Karen Dutton, appeals *pro se* from a Family Court order modifying the custody of her minor child. In that order, the trial justice awarded the sole custody and physical placement of the child to the plaintiff, Richard L. Gallagher, with reasonable visitation rights to the defendant. This matter came before the Supreme Court pursuant to an order directing both parties to appear and show cause why the issue raised in this appeal should not be decided summarily. After considering the written submissions[1] of the parties and examining the record, we discern no such cause, and shall proceed to decide this case without further briefing or argument. For the reasons set forth herein, we affirm.

Mr. Gallagher and Ms. Dutton are the parents of Laura, who was born in 1993. On July 25, 1996, Mr. Gallagher filed a miscellaneous petition seeking joint legal custody of Laura, as well as visitation rights. By agreement of the parties, a judgment was entered on January 8, 1998, granting them joint custody and specifying a schedule under which Laura would live with Ms. Dutton during the school year, and with Mr. Gallagher during the summers. Each party also was awarded visitation rights when the child was not in his or her physical placement. The judgment also provided for reciprocal child support.

In November 1998, however, Mr. Gallagher filed motions seeking to modify custody and visitation and to adjudge defendant in contempt for failing to pay child support. Thereafter, the Family Court ordered a home investigation. Hearings on plaintiff's motions were held before a justice of the Family Court on various dates from April to July 1999. On October 18, 1999, after extensive testimony, the Family Court justice found by a fair preponderance of the evidence that it was in Laura's best interests to be in the sole custody and physical placement of Mr. Gallagher. In so holding, she found that plaintiff had satisfied his burden of showing a significant change in circumstances since the

1. The defendant did not appear for the oral arguments. We have, therefore, decided this case upon the written submissions.

January 8, 1998 judgment granting custody was entered. The defendant was granted reasonable rights of visitation, which visits were to exclude the presence of a certain unrelated male, Mark Lanoue. The trial justice also ordered that Laura's surname be changed from Dutton to Dutton Gallagher.[2] The defendant filed her notice of appeal on November 9, 1999.[3]

This Court's review of a motion to modify a child-custody award is limited to a consideration of whether the Family Court justice abused his or her discretion. *Suddes v. Spinelli*, 703 A.2d 605, 607 (R.I. 1997). "If the Family Court has properly considered what custody arrangements are in the best interests of the [child], we will not disturb such a discretionary decision." *Id.* The moving party has the burden to show by a preponderance of the evidence that the circumstances existing at the time the decree was entered have so changed that custody should be modified in the interest of the child's welfare. *Id.* "Until and unless the moving party meets this burden, the prior custody award should remain intact." *Id.*

This Court has established a list of non-exclusive factors that must be weighed in the best interests of the child analysis. These factors include:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Petti-*

---

**2.** Originally, no order was entered reflecting the trial justice's bench decision. An order memorializing the decision was entered on June 21, 2005, *nunc pro tunc* November 29, 1999.

**3.** We are perplexed and somewhat disturbed about the procedural history of this appeal, particularly the fact that it has been allowed to languish for more than six years, fully one-half the life of the child affected by the custody order. The docket indicates that the papers were transmitted to the Supreme Court on April 18, 2000, and that defendant filed a document entitled "Decision," which we construe to be a Rule 12A statement of the case, on June 1, 2000, albeit file marked "May 32, 2000." On April 2, 2001, a conditional order was entered defaulting plaintiff for failing to file a prebriefing statement. Over the course of the next several days, plaintiff filed motions to vacate the conditional default, to extend

the time to file a prebriefing statement, and to dismiss the appeal on the grounds that no order had ever been entered in the Family Court from which defendant could appeal, as well as for procedural deficiencies in defendant's prebriefing statement.

The docket further indicates that plaintiff's motion to vacate was granted, and the motion to dismiss was deferred. Thereafter, plaintiff filed, and was granted, five motions to enlarge the time for filing his prebriefing statement and to obtain the transcript of a particular hearing. On February 19, 2003, a single justice of this Court then remanded the papers to the Family Court and ordered the parties to obtain entry of a final order as prescribed by Rule 58 of the Family Court Rules of Procedure for Domestic Relations. As noted, this was accomplished on June 21, 2005, and the papers were then returned to this Court.

*nato v. Pettinato,* 582 A.2d 909, 913–14 (R.I.1990) (footnotes omitted).

We will not disturb the discretionary decision of a Family Court justice to modify custody when he or she has considered a combination of and interaction among these relevant factors. *See id.* at 914. "Moreover, we have stated that we shall not disturb findings of fact made by a Family Court justice unless the individual taking the appeal can show that such findings are clearly wrong or that the trial justice overlooked or misconceived evidence relevant to the issues decided." *D'Onofrio v. D'Onofrio,* 738 A.2d 1081, 1083 (R.I.1999).

The best interests of the child standard also is employed when considering petitions to change the surname of a minor child. *Ribeiro v. Monahan,* 524 A.2d 586, 587 (R.I.1987). Factors to consider in this determination include the names of other members of the child's household, the name on the birth certificate, and the length of time the child has used the surname. *Branch v. Quattrocchi,* 793 A.2d 203, 205 (R.I.2002).

On appeal, defendant suggests that the Family Court justice abused her discretion and/or misconceived or overlooked evidence in deciding to modify custody. The defendant also challenges the decision to change Laura's surname.

In her bench decision, the Family Court justice, recognizing that plaintiff had the burden of proving that there had been a significant change in circumstances since the entry of the original judgment, found sufficient evidence to justify a modification of custody. Specifically, she referred to the testimony of two Providence police officers indicating that Ms. Dutton had initiated seven calls to the police due to domestic disturbances or intoxicated persons at her residence. The trial justice then articulated her reasons for finding that a change of custody would be in Laura's best interests:

"Mr. Gallagher resides with his mother. He is employed. There has not been any witnesses presented to challenge the stability of his home or his devotion to his daughter. Ms. Dutton, on the other hand, lives on the edge surrounded by and involved with people who, apparently, drink too much and get arrested and commit acts of domestic violence. This child who is bright, according to her teacher, would prefer the peace and quiet of her father's home. Ms. Dutton has used a restraining order against Mr. Gallagher as a hammer to justify not letting him share in significant issues regarding his daughter."

After reviewing the record, we are satisfied that the Family Court justice's decision to modify the January 8, 1998 judgment and to award sole custody and physical placement to Mr. Gallagher was a sustainable exercise of her discretion. Although she did not specifically cite each *Pettinato* factor, a careful review of the Family Court justice's decision and findings of fact reveals that she implicitly took into account all the relevant factors. Indeed, this Court has made clear that we need "not conclude that the [Family Court] overlooked [ ] evidence merely because its decision does not refer to it specifically." *D'Onofrio,* 738 A.2d at 1084. Moreover, no single factor is determinative; rather, a trial justice "must consider a combination of and an interaction among all the relevant factors that affect the child's best interests." *Pettinato,* 582 A.2d at 914.

The Family Court justice took into account the testimony of the Family Court investigator who, after interviewing both parties and the child and visiting both homes, concluded that Mr. Gallagher would provide the more stable environ-

ment for Laura. The Family Court justice also considered the interaction and interrelationship of the child with her parents and other persons who may affect the child's best interests. Notably, she remarked that at Ms. Dutton's home, Laura was exposed to excessive drinking, violent neighbors, and foul language. The trial justice also noted that the child had expressed a preference for "the peace and quiet of her father's home." Finally, the justice considered the willingness of each parent to facilitate the relationship between the child and the other parent when she found that defendant had "used a restraining order against [plaintiff] as a hammer to justify not letting him share in significant issues regarding his daughter." With these findings before us, we are satisfied that the trial justice considered the appropriate factors. *See Pettinato,* 582 A.2d at 913–14.

In addition, we cannot say that the Family Court justice overlooked or misconceived evidence relevant to the issues decided merely because she made credibility determinations of the witnesses, as defendant seems to suggest. *See D'Onofrio,* 738 A.2d at 1083–84. The justice exercised her discretion in assessing the credibility of the testimony offered, and noted in her decision that such credibility was a "very, very big issue here." She found that defendant "was not truthful about a lot of things," a determination that was well within her fact-finding power. *See, e.g., Berard v. Berard,* 749 A.2d 577, 580 (R.I.2000). Accordingly, we find that the Family Court justice did not abuse her discretion in finding that a change of circumstances and the child's best interests required changing custody to plaintiff.

We also are satisfied that the best interests of the child warranted changing her surname to Dutton Gallagher. As the Family Court justice said, having placed the child in the sole custody of her father, Laura would be more comfortable carrying his name, as well as that of her mother. Although Dutton was the name on her birth certificate, Laura would henceforth carry both her parents' surnames. We conclude, therefore, that the Family Court justice did not abuse her discretion in ordering the name change.

For the reasons stated herein, we affirm the order of the Family Court.