Elisa M. Catley                    :

v.                    :

Mark D. Sampson.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Elisa M. Catley          :

v.          :

Mark D. Sampson.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  Mark D. Sampson (defendant) appeals pro se from a Family Court order denying his motion to modify custody.  The defendant contends that, because his conviction for second-degree child abuse had been vacated by this Court and the charges subsequently were dismissed, the hearing justice should have awarded him full custody even in the face of his failure to complete required domestic-violence counseling and drug testing.  This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

**I**

**Facts and Procedural History**

Elisa M. Catley (plaintiff) is the mother of two boys: Bobby, born in 2001, and Alex, born in 2004.[1]  The plaintiff filed complaints for paternity against defendant in 2004, asserting that he was the biological father of both boys.  At the time, defendant was serving a three-year

---

[1] Because the boys are minor children, we shall use pseudonyms to protect their privacy.

sentence at the Adult Correctional Institutions (ACI). The defendant admitted that he was the father of Bobby, but he initially questioned his paternity of Alex. Paternity testing established that Alex, too, was his child. The defendant then moved for visitation and to have the children's last name changed to his. On December 7, 2006, a Family Court magistrate entered an order allowing defendant reasonable rights of visitation.

In April 2007, defendant filed a motion to adjudge plaintiff in contempt of the 2006 order granting visitation. The hearing magistrate found plaintiff to be in technical contempt and issued a second order specifying a more detailed visitation schedule, including overnight stays.

On August 4, 2007, plaintiff was assisting three-year-old Alex in the bathroom when she noticed welts, cuts, and bruises all over the child's buttocks. Alex and his brother had just returned from staying with defendant. When plaintiff asked her son what had happened to him, he replied, "[D]addy spanked me but it's okay now mommy, it doesn't need ice anymore." The plaintiff then received a telephone call from defendant; during the conversation he admitted to hitting Alex, saying, "[B]ut don't get it wrong[,] that wasn't from me hitting him once, his behind was like that from me hitting him multiple times."[2] The plaintiff photographed the child's injuries and then took him to a pediatrician's office to be examined.

Alex was examined by physician assistant Cheryl Trager, who reported "significant ecchymosis on buttocks, 2 linear horizontal abrasions on [left] buttock [which were] 2 cm. [and] parallel." According to Ms. Trager's report, when she asked who caused the bruises, Alex responded, "Daddy spanked me," and also told her that he had been hit by hand and with a bat. The police report states that Ms. Trager also examined Bobby, who admitted that he had been

---

[2] In a controlled telephone call between plaintiff and defendant, recorded by the Rhode Island State Police on August 6, 2007, defendant explained that he hit Bobby to "correct" him for urinating in his pants and for refusing to eat because he felt sick.

spanked by his father during prior visits. Ms. Trager reported the incident to the Department of Children, Youth and Families (DCYF). According to the police report, a DCYF investigator, after interviewing the children, indicated defendant for "excessive inappropriate discipline causing cut[s,] bruises and welts." The defendant subsequently was arrested and charged with second-degree child abuse.

On August 7, 2007, plaintiff filed an emergency motion for custody in Family Court, asking that she be granted sole custody of the two boys and that "all visitation [be] stopped." On August 15, 2007, a police report established that defendant had been arrested again after a traffic stop in which cocaine and an open container of alcohol were found in his car. The defendant admitted that the cocaine was his and that "he deals just to try to make a living and feed his kids." The defendant was charged with possession of a controlled substance, as well as citations for driving with an open alcohol container and without proof of insurance.

On October 4, 2007, plaintiff filed a second motion, again seeking sole custody and asking that visitation be terminated. A hearing was held on plaintiff's motions on January 31, 2008.[3] On February 14, 2008, a Family Court magistrate issued a written judgment, which included the following findings of fact:

> "1) The [c]ourt finds that the defendant, Mark Sampson, caused physical harm to his son, [Alex], during the summer of 2007. Said harm resulted in needless and excessive injury to the body of three and one-half year old [Alex].
> "2) The [c]ourt finds that the defendant's actions were excessive. The defendant imposed injury to his son for seemingly no reason at all. The incidental urination by a young child of tender years and the vomiting of food because the child felt sick were not reasons for the defendant, Mark Sampson, to impose such dire consequences on his young son.

---

[3] No transcript of the January 31, 2008 hearing was submitted with this appeal. However, the exhibits entered into evidence at that hearing were submitted as part of the record.

"3)     The [c]ourt finds the defendant has assaulted his son [Bobby] in the past.

"4)     The [c]ourt finds that the defendant has been incarcerated in the past for actions of domestic violence against the plaintiff.

"5)     The [c]ourt finds that the defendant did possess cocaine during August 2007, and was incarcerated for this offense.

"6)     The [c]ourt takes judicial notice of an order dated May 17, 2007, which previously granted the defendant joint custody and visitation with his minor children.

"7)     The [c]ourt finds that defendant's actions constitute a change of circumstances necessitating a modification of the [c]ourt's previous custody and visitation order.

"8)     The [c]ourt finds that defendant's problem with domestic violence in the past and recent actions of violence necessitate a termination of all visitation until the defendant can prove to this [c]ourt that he is rehabilitated and that it is in the children['s] best interest to visit with the defendant.

"9)     The [c]ourt finds that defendant's arrest and incarceration for a drug offense necessitates that visitation be further postponed until the [c]ourt finds that the defendant is rehabilitated and that it is in the children['s] best interest to visit with the defendant.

"10)    The [c]ourt finds it is not in the children['s] best interest[] to have visitation with the defendant at this time."

In addition to awarding sole custody to plaintiff, the hearing magistrate denied defendant all visitation until the following conditions were met:

"a. The defendant must attend and successfully complete domestic violence counseling to the satisfaction of the [c]ourt. The counseling must be given by a certified batterer's intervention counselor that the defendant has never met with before.

"b. The defendant must attend and successfully complete a substance abuse program and submit to random urine screens and breathalyzers. Said screens and breathalyzers must be done for at least a six-month period of time and must all be negative during that period of time."

In April 2008, defendant was convicted of second-degree child abuse after a bench trial.[4] See State v. Sampson, 24 A.3d 1131, 1132, 1133, 1137 (R.I. 2011). The defendant filed an appeal to this Court, arguing that he had not "knowingly, intelligently, and voluntarily waive[d]

---

[4] The defendant received a five-year sentence with fifteen months to serve and the remainder suspended with probation. State v. Sampson, 24 A.3d 1131, 1139 (R.I. 2011).

his right to counsel." Id. at 1132. We vacated the conviction and remanded for a new trial, finding that the trial justice "erroneously suggested to defendant that the decision" to waive a jury trial is made by counsel rather than by the client. Id. at 1132, 1140, 1141-42.

On remand, the charges were dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. Shortly thereafter, defendant filed a motion for sole custody in Family Court, stating that, because plaintiff "charged [him] with second degree child abuse," but he had prevailed on appeal and the charges subsequently were dismissed, "for this [he is] asking full custody." The defendant's motion was heard on January 20, 2012, at which time he testified that he "wasn't going to do a domestic class for teaching and correcting [his] child." Although he contended that he had done some urine testing two years prior, defendant did not proffer any evidence demonstrating six months of negative urine screens and breathalyzers. Further, defendant stated that he intended to get a medical marijuana license to help deal with stress. The hearing justice denied the motion, finding that "not one (1) scintilla of evidence has been introduced to prove that [d]efendant * * * satisfied the conditions" set forth in the 2008 custody order. The defendant timely appealed.

## II

### Standard of Review

This Court will review a "Family Court justice's 'denial of a motion to modify a prior custody award to determine whether an abuse of discretion has occurred.'" Guertin v. Guertin, 870 A.2d 1011, 1017 (R.I. 2005) (quoting Suddes v. Spinelli, 703 A.2d 605, 607 (R.I. 1997)). "[W]e will 'not disturb findings of fact made by a Family Court justice unless the individual taking the appeal can show that such findings are clearly wrong or that the [hearing] justice overlooked or misconceived evidence relevant to the issues decided.'" Id. (quoting D'Onofrio v.

- 5 -

D'Onofrio, 738 A.2d 1081, 1083 (R.I. 1999)). A modification of a custody decree should not be allowed by the Family Court justice "unless there has been a showing by the moving party by a preponderance of evidence that the conditions or circumstances existing at the time the decree was entered have so changed that it should be modified in the interest of the child['s] welfare." Id. (quoting Kettelle v. Kettelle, 707 A.2d 268, 269 (R.I. 1998)). "Until and unless the moving party meets this burden, the prior custody award should remain intact." Id. (quoting Suddes, 703 A.2d at 607).

### III

### Discussion

The defendant asserted at oral argument that, because his conviction was vacated and ultimately was dismissed, the Family Court's 2008 order awarding sole custody to plaintiff should be modified, and he should be awarded sole custody of the two children. At the same time, defendant appears to argue that the Rule 48(a) dismissal of the criminal information relating to the child-abuse charge should nullify the 2008 order, leaving in its stead the 2007 order, which provided for shared custody and visitation. The plaintiff asserts that, because the 2008 order was based on the hearing justice's findings of fact made independent of and prior to the criminal conviction, the dismissal of that conviction has no effect on the order. Further, plaintiff avers that defendant has not complied with the conditions required to prove that it would be in the best interest of the children to modify the custody order because he refuses to attend domestic-violence counseling and has not had six months of clean alcohol and drug screens.

To prevail on a motion to modify child custody, "the moving party must show, 'by a fair preponderance of the evidence that the conditions or circumstances existing at the time the [original] decree was entered have so changed that [the decree] should be modified in the interest

of the child['s] welfare.'" Vicente v. Vicente, 950 A.2d 461, 462 (R.I. 2008) (mem.) (quoting Suddes, 703 A.2d at 607). Further, "[u]nless the movant meets this stringent evidentiary standard, the prior custody decision should remain intact." Id.

The defendant offers the vacating of his conviction and the dismissal of the second-degree child abuse charge as the changed circumstance that he argues is sufficient to modify the existing custody decree. The defendant seems to suggest that the dismissal invalidates the existing custody order and somehow turns back the clock to the prior order that allowed for joint custody and visitation. Quite simply, defendant is mistaken. The Family Court magistrate made ten findings of fact before issuing the 2008 order. Each of those findings was based on testimony given and exhibits entered in open court, not on the criminal proceeding that was later dismissed. In fact, the criminal proceeding in which defendant was originally convicted took place two months after the Family Court order was entered. Finally, the standard employed by the hearing justice in motions to modify custody is a "fair preponderance of the evidence," which falls well short of the standard required for a criminal conviction, "beyond a reasonable doubt." See Vicente, 950 A.2d at 462; State v. Desrosiers, 559 A.2d 641, 645 (R.I. 1989). In short, while the two adjudications arise from the same act (hitting Alex), they are otherwise wholly unrelated, and the vacating and dismissal of one has no effect on the other.

General Laws 1956 § 15-5-16 governs custody determinations. Section 15-5-16(d)(1) states that "the court shall provide for the reasonable right of visitation by the natural parent not having custody of the children, except upon the showing of cause why the right should not be granted." Pursuant to § 15-5-16(d)(3), "[a] judicial determination that the child has been physically or sexually abused by the natural parent shall constitute sufficient cause to deny the right of visitation." The Family Court's findings, made after the magistrate heard testimony and

- 7 -

reviewed evidence, are such a judicial determination; there is no requirement that the judicial determination must rise to the level of a criminal conviction. In reviewing her well-reasoned decision and order, we can perceive no evidence of an abuse of discretion by the magistrate.

Section 15-5-16(d)(3) provides for later review of orders denying custody, to "determine what, if any, action the parent has taken to rehabilitate himself or herself and whether the denial of visitation continues to be in the child's best interests." Accordingly, in the 2008 order, the Family Court magistrate set forth specific conditions that the defendant would need to satisfy in order to have visitation restored: He had to successfully complete domestic-violence counseling and a drug program, with six months of negative urine screens and breathalyzers. These conditions seem to have been carefully crafted so as to ascertain the defendant's rehabilitation regarding the behaviors that led to his being denied visitation. Moreover, § 15-5-16(d)(4) provides that the court "may order a natural parent who has been denied the right of visitation due to physical or sexual abuse of his or her child to engage in counseling" and further provides that failure to engage in that counseling "shall constitute sufficient cause to deny visitation." Unfortunately, the defendant has not satisfied either condition. He has not attended a single domestic-violence counseling session and, in fact, told the hearing justice that he "was not going to participate in a domestic violence class for correcting my child." Further, in his Rule 12A statement, he declared: "I stand by that decision today." Additionally, although he participated in a Phoenix House program for approximately eight weeks in 2009, the defendant has not provided any documentation of negative drug and alcohol screens. We are satisfied that the hearing justice was not clearly wrong, nor did she overlook or misconceive evidence in finding that "not one (1) scintilla of evidence [was provided] to prove that [the] [d]efendant [has]

satisfied the conditions" set forth in the order.  Accordingly, we hold that it was not an abuse of discretion for the hearing justice to deny the defendant's motion to modify custody.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the order of the Family Court.  The record shall be remanded to the Family Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Elisa M. Catley v. Mark D. Simpson.

**CASE NO:**        No. 2012-167-Appeal.
                              (04R-1856)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  May 28, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Washington County Family Court

**JUDGE FROM LOWER COURT**:

                              Associate Justice Debra E. DiSegna

**ATTORNEYS ON APPEAL:**

                              For Plaintiff:  James M. Callaghan, Esq.

                              For Defendant:  Marc D. Sampson, Pro Se