### Eloise BRANCH

v.

### William QUATTROCCHI, Jr.

### No. 2000–518–Appeal.

Supreme Court of Rhode Island.

March 28, 2002.

Marie T. Roebuck, Providence, for Plaintiff.

Barbara E. Grady, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

### OPINION

PER CURIAM.

What's in a child's surname that would entitle a parent to change it? Only the child's best interests, we have held, can warrant such a renaming. Here, the defendant, William Quattrocchi, Jr. (father), appeals from a Family Court order granting the motion of the plaintiff, Eloise Branch (mother), to change the surname of their minor child from that of the mother's surname (Branch) when the child was born on June 27, 1994, to that of the child's stepfather, William Ricci, who married the mother on February 14, 1999. A single justice of this Court ordered both parties to show cause why the issues raised by

this appeal should not be summarily decided. Because neither party has done so, we proceed to decide the appeal at this time.

In June 1994, the mother and father were the unmarried parents of a minor child, a boy whom the mother surnamed Branch. In September 1995, the Family Court adjudged the father to be the child's biological parent. Both parties assert that, after this ruling, a long history of hostility over visitation ensued between them, as evidenced by numerous motions and court orders. On June 24, 1999, the parties entered into a consent decree whereby they agreed that the father would have weekly supervised visitation with the child, provided he continued with drug counseling and random urine screens.

In August 1999, the mother filed a motion to change the child's surname from Branch to Ricci, the mother's new surname after her recent marriage. In her motion, the mother stated she had sole custody of the child. She contended that, after her marriage to William Ricci, the child identified with and referred to himself in preschool by the surname "Ricci" because it not only was his stepfather's surname but also it was the surname of the child's two siblings. The mother also suggested that changing her child's last name would be in his best interest. In a separate motion, she also sought to suspend the father's supervised visits with the child.

In response to the mother's name-changing request, the father filed his own motion to change the boy's surname from Branch to Quattrocchi. In Family Court, the motion justice convened an off-the-record chambers conference with the parties' counsel. Thereafter, on the record, the motion justice stated that she was not going to permit either party to change the child's surname. In response to the motion justice's opening assertion, the mother's counsel shifted gears and pressed to have the child's middle name changed from Joseph to Ricci. The mother's lawyer then stated:

> "And if I may make a very brief proffer, if my client were to testify, and I have not subpoenaed in the child's preschool teachers, but the child has lots of behavioral issues; we discussed briefly the separation anxiety in chambers. But there's this identity issue going on and he refers to himself as Ricci. Mom would testify he drives around in the car every day singing, 'R-i-c-c-i, when is my name going to be Ricci? My sister is a Ricci, what's going on?' And I thought perhaps a way for the child to be able to have the same identity would be to allow his middle name to change from Joseph to Ricci."

Despite the father's objections and protestations against changing the child's middle or last name to that of his stepfather, the motion justice changed her mind after hearing this "proffer" and concluded that it was in the child's best interest "to carry the name of the woman or the parent with whom this child resides on a regular basis so they have some identity." But in ordering the change of the child's surname, the motion justice failed to hold an evidentiary hearing, nor did she otherwise obtain evidence from the parties pertinent to this request. The court simply stated: "I think the equitable argument carries today, and I will authorize the name change as being in the best interests of this child. The name that is carried by his mother." The motion justice also denied the mother's motion to suspend the father's visitation rights. She ordered that visitation between the father and the child should continue to be supervised, conditioned on the father submitting to random weekly urine screens. The motion justice also noted that the father's contact with his son

would continue to be supervised until he permitted the court to review, *in-camera*, his medical and counseling records.

Thereafter, the court entered an order granting the mother's motion to change the surname of the child from Branch to Ricci. The father then filed a timely notice of appeal. He is challenging only that part of the order granting the mother's motion to change the surname of the child from that of the mother to that of the stepfather.

The father argues that the motion justice erred in changing his son's surname to that of his stepfather because there was no evidence or testimony presented to the court about whether this proposed name change would be in the child's best interest. He contends that it was not in the child's best interest to change his son's surname "simply because his mother elected to remarry and change her name to Ricci."

The mother contends, however, that the motion justice properly applied the "best interest of the child" standard set forth in *Ribeiro v. Monahan*, 524 A.2d 586 (R.I. 1987). She also suggests that, despite the fact that there was no testimony or evidence presented on the day of the hearing, the motion justice was well aware of the facts in this case because she had been hearing the case "for well over a year and a half before granting the name change."

In *Ribeiro*, this Court stated that the "best interest of the child" standard would be employed when considering petitions to change the name of minor children. *Id.* at 587. Because this is a fact-intensive determination, the Family Court, we held, should consider numerous factors in deciding what is in the child's best interest, including the names of other members of the child's household, what the child's name was on the birth certificate, and the length of time that the child has used the surname. *Id.*

Here, scant evidence on the record presented to us reveals what would be in this child's best interest with respect to the proposed name change. Indeed, to date there has been no testimony or evidentiary submission relative to this issue. The mother merely made an offer of proof that the child was having difficulty identifying himself as part of his mother's family. Moreover, the mother, in what appeared to be an attempt at a compromise, requested in open court that the child's middle name be changed to her new husband's surname, rather than changing the child's surname. Despite this modified request, the court permitted the mother to change the child's surname after initially stating that she was not going to permit either party to do so. The motion justice seemed to place significant emphasis on the fact that it would be in the child's best interest to carry the surname of his mother because it would afford him some identity with the family with whom he now resides. Although that consideration is certainly one factor to be considered in determining what would be in a child's best interest, it does not appear from the record what, if any, evidence exists to support such a finding. The motion justice apparently based her conclusion upon the bare assertions of the mother's counsel that changing the child's surname was in his best interest. But aside from whatever unspecified and unreferenced facts may have been adduced in previous hearings on unrelated issues, there was no evidence in this case—other than the conclusory and nonevidentiary proffers and assertions by the mother's attorney—to support such a finding. Additionally, it does not appear that the court gave any specific consideration to the other various factors delineated in *Ribeiro*.

We are of the opinion that the Family Court's record in this case simply fails to establish that a change of the child's surname was in his best interest. Vague and nonspecific references to a year and a half of past evidence in this case do not overcome this deficiency in the record. Although the court properly may rely upon affidavits, stipulations, testimony, and other evidence introduced in previous proceedings, such evidence should be introduced or stipulated into the record in connection with the hearing on this motion before the court or counsel can rely upon such material to support the name-change request. And, in any event, the parties must be given the opportunity to supplement the previous record with stipulations, testimony, and other evidence relevant to the *Ribeiro* factors—subject, as always, to the court's ability to prevent duplicative and cumulative presentations. But the court cannot simply hold a chambers conference, listen to a "proffer" from one side, and then rule on the motion based on the court's putative overall knowledge of the parties and the case history.

For these reasons, we sustain the father's appeal, vacate the Family Court's order changing the child's surname, and remand this matter to the Family Court for an evidentiary hearing and determination consistent with the Court's opinion in this case and in *Ribeiro*. In doing so, however, we hereby direct that the child retain the surname of Ricci on an interim basis until the Family Court can complete the hearing on remand and thereafter decide the motion and enter a new order based on the evidence presented.